J-A25036-16

2016 PA Super 247

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN RICHARD, | |
| Appellant | No. 2095 MDA 2015 |

Appeal from the Judgment of Sentence August 6, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000708-2013
CP-14-CR-0000711-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:        **FILED NOVEMBER 15, 2016**

Appellant Ryan Richard appeals from the judgment of sentence entered in the Court of Common Pleas of Centre County on August 6, 2015, at which time he was sentenced to an aggregate term of seven (7) years' to seventeen (17) years' incarceration.  Upon our review, we affirm.

The record reveals that in 1989, Appellant pled guilty to third degree murder for the death of his wife and was imprisoned.  Appellant was scheduled to be released from prison on December 13, 2012; however, on that date he was arrested and charged with eight counts of Terroristic Threats and eight summary counts of Harassment.[1]  The charges stemmed

_____

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2709(a)(1), respectively.

[*]Former Justice specially assigned to the Superior Court.

from two letters he had sent to his now deceased mother[2] wherein he threatened to kill certain individuals who had been involved in the murder case. One of the letters detailed in gruesome detail how Appellant intended to murder each person, which included a former Berks County judge, the former Berks County District Attorney, a retired state trooper, Appellant's former defense counsel, girlfriend and brother, and several others.

Appellant's brother Russell Richard discovered the letters in his mother's home following her death. The undated "hit list" letter was contained in an envelope upon which was written, "Put this with my other stuff. This is for me when I get out." Russell Richard contacted the Pennsylvania State Police who then relayed the contents of the communications to the individuals named therein. Appellant thereafter was charged with the aforementioned offenses. All of these counts were docketed at CP-14-CR-0016-2013, and Appellant was incarcerated on said charges.

On April 10, 2013, Appellant was charged with two (2) counts of Terroristic Threats which were docketed at CP-14-CR-0708-2013. Also on April 10, 2013, Appellant was charged with a single count of Intimidation of Witnesses or Victims, 18 Pa.C.S.A. § 4952(a)(3), and that count was docketed at CP-13-CR-0711-2013. These charges arose following statements Appellant made in an unmonitored telephone call to his estranged daughter

---

[2] Appellant's mother passed away on January 30, 2010.

Robyn Apgar from his counselor's office in the prison on April 4, 2013.[3] At that time, Appellant made threatening remarks directed toward Ms. Apgar and Russell Richard and in doing so referenced his brother's testimony against him on April 2, 2013.

On November 13, 2014, a jury trial was held on the charges pertaining to all three dockets, following which Appellant was found guilty of the two counts of Terroristic threats docketed at CP-14-CR-0708-2013 and the Intimidation of Witnesses or Victims charge docketed at CP-13-CR-0711-2013. A motion for judgment of acquittal was granted as to one count of Terroristic Threats, and Appellant was found not guilty of the remaining seven counts of Terroristic Threats docketed at CP-14-CR-0016-2013. On August 6, 2015, Appellant was sentenced, and on August 14, 2015, he filed a timely post-sentence motion. After hearing argument on his motion on August 24, 2015, the trial court denied the same in its Opinion and Order of November 6, 2015.

A timely notice of appeal followed, and Appellant filed his Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on December 29, 2015, wherein he raised seven issues. In its Opinion filed on January 8, 2016, pursuant to Pa.R.A.P. 1925(a), the trial

---

[3] At that time, it was not customary for calls to be recorded when inmates used the phone in their counselor's offices. Approximately ten minutes after Appellant ended his phone call, Appellant's counselor was notified by his lieutenant that the state police had contacted the prison in reference to a threatening phone call that had been made from the counselor's office. N.T. Trial, 11/13/14, at 233, 236.

court noted that as one of the issues Appellant raised had been decided by the motions court, that court would address it in a separate opinion. The trial court proceeded to respond to issues two through seven raised in Appellant's concise statement by relying upon its reasoning set forth in its Opinion and Order of November 6, 2015. The motion court's Opinion in Response to Matters Complained of on Appeal was filed on January 22, 2016, wherein the court relied upon its prior reasoning in its Order of August 30, 2013.

In his brief, Appellant presents the following Statement of Questions Involved:

> A. Did the lower court commit and [sic] error of law by denying [Appellant's] Motion to Sever pursuant to Pa.R.Crim.P. 583, which specifically addressed the issue of whether evidence of the gruesome and explicit threats at docket 16-2013 would have been inadmissible in the trials at dockets 708/711-2013 and the offenses underlying each docket were not based on the same act or transaction?
>
> B. Did the lower court err in determining that evidence of [Appellant's] prior murder conviction and aggravated assault conviction was admissible pursuant to Pa.R.E. 404(b) when no permissible purpose such as motive, opportunity, intent, preparation, plan, knowledge, etc. could justify the admission of such inflammatory evidence, and further the probative value of such old convictions did not outweigh the substantial potential for unfair prejudice?
>
> C. Did the lower court committed [sic] an error of law by allowing the introduction of the highly prejudicial facts of the 26 year old murder case which confused, mislead, and inflamed the emotions of the jury, resulting in prejudice to [Appellant] and ultimately an unfair trial?

D. Did the lower court commit an error of law by denying [Appellant's] Motion for Judgment of Acquittal at the close of the Commonwealth's case in chief concerning docket CP-14-CR-16-2013[?][1]

E. Did the lower court commit an error of law and abuse of discretion by accepting the verdict which was against the weight of the evidence and insufficient to support the convictions, resulting in a miscarriage of justice?

F. Did the lower court commit an error of law in denying [Appellant] credit for all time he has spent incarcerated prior to sentencing?

_____

[1]Although [Appellant] was ultimately acquitted of the charges associated with this docket, the denial of this motion had a prejudicial impact on [Appellant's] cases docketed at CP-14-CR-708-2013 and CP-14-CR-711-2013 for which he was convicted. The jury was asked to consider very graphic threats that very clearly fell outside the statute of limitations requiring verdicts of not guilty. This had a detrimental impact on the full and fair consideration of the remaining charges of which [Appellant] was convicted. Due to the prejudicial impact that will be further developed within this brief, it is respectfully submitted that this issue was not rendered moot by the jury finding [Appellant] not guilty.

Brief for Appellant at 1-2.

Initially, Appellant contends the trial court erred in denying his motion to sever filed pursuant to Pa.R.Crim.P. 583. Brief for Appellant at 8. Appellant maintains the three criminal complaints should have been severed into two separate trials, with the focus of one being on the charges stemming from the letters Appellant allegedly wrote and the other upon the charges that were filed following the allegedly threatening telephone call he made to his daughter from prison because it is "axiomatic that a murder

conviction will prejudice the jury against [Appellant] when deliberating on the Phone Case." *Id*. at 11, 13.

"The decision to sever offenses is within the sound discretion of the trial court and will be reversed only for a manifest abuse of that discretion." ***Commonwealth v. Collins***, 550 Pa. 46, 54, 703 A.2d 418, 422 (1997) (citations omitted).

> The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1)[t]he defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find.

***Commonwealth v. Janda***, 14 A.3d 147, 155 (Pa.Super. 2011) quoting ***Commonwealth v. Morris***, 493 Pa. 164, 171, 425 A.2d 715, 718 (1981). Thus, in determining whether the trial court herein abused its discretion, we must "weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy." ***Id.***

Pennsylvania Rule of Criminal Procedure 582 provides, in pertinent part, the following:

**Rule 582. Joinder—Trial of Separate Indictments or Informations**

**(A)   Standards**

(1)   Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).  In addition, Rule 583 states:

**Rule 583. Severance of Offenses or Defendants**

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime."

***Commonwealth v. Dozzo****,* 991 A.2d 898, 902 (Pa.Super. 2010) (citation omitted), *appeal denied,* 607 Pa. 709, 5 A.3d 818 (2010).

The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id*. (quoting ***Commonwealth v. Lauro****,* 819 A.2d 100, 107 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003)).  In addition:

[w]here the defendant moves to sever offenses not based on the same act or transaction ... the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Dozzo, supra* at 902 (*quoting Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)). Evidence of other crimes is not admissible solely to show the defendant's bad character or propensity to commit crimes. *Id.* Nevertheless, evidence of other crimes is admissible to demonstrate:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Janda, supra* at 156 (quoting *Morris, supra* at 175, 425 A.2d at 720). "[E]vidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts." *Dozzo, supra* at 902 (quoting *Collins, supra* at 55, 703 A.2d at 423). *See also Commonwealth v. Thomas*, 879 A.2d 246, 260-61 (Pa.Super. 2005), *appeal denied,* 605 Pa. 685, 989 A.2d 917 (2010) (holding court properly granted Commonwealth's motion to consolidate charges resulting from defendant's domestic dispute with his girlfriend at

their home with charges following another domestic dispute between defendant and his girlfriend where the second assault occurred on day defendant was released from jail after victim had refused to testify against him at hearing on first assault; evidence of each assault would be admissible in prosecution of other, as it constituted chain or sequence of events that formed history of case and was part of natural development of case; jury was capable of separating evidence into different incidents on different days that gave rise to different crimes; evidence of defendant's relationship with victim was admissible to prove motive, malice, ill-will, and complete story of their relationship; and defendant did not suffer undue prejudice as result of consolidation of offenses for trial).

In its Order entered on August 30, 2013, denying Appellant's request for severance of the charges at each of the three dockets herein, the motions court stated:

> In the instant action, the cases [Appellant] asks this [c]ourt to sever are, as the Commonwealth contends, "inextricably intertwined." **See Commonwealth v. Wholaver**, 989 A.2d 883 (Pa. 2010) (holding that charges for sexual offense, solicitation of murder, and murder charges should be tried together "because the charges all flowed from the same events and were part of the same story…"). Furthermore, the [c]ourt is persuaded that the evidence to be presented is offered to show [Appellant's] motive, which is allowable pursuant to Pennsylvania Rule of Evidence No. 404(b), which provides evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or lack of accident. Pa.R.P. No. 404(b). The probative value of this evidence outweighs its potential for unfair prejudice. The [c]ourt further agrees with the Commonwealth that the evidence of each incident would be

admissible in separate trials and the events that give rise to each incident are part of the "same act or transaction."  Pa.R.Crim.P. No. 582(A)(1)(b).

Motions Court Order, filed 8/30/13, at 2.

We see no reason to disrupt the court's ruling.   As his prison sentence for murdering his wife drew to a close, Appellant was charged with offenses arising from his threats to individuals involved in the case which he proposed to carry out upon his release.  Two days after a hearing was held on those charges at which Russell Richard testified, Appellant's threats continued when he called Robyn Apgar on April 4, 2013, and threatened his brother and her.  It was this phone call that gave rise to the charges of which Appellant was ultimately convicted.  As such, his actions constituted an ongoing act of intimidation.  ***See Commonwealth v. Wholaver***, 605 Pa. 325, 352, 989 A.2d 883, 899 (2010) (finding, *inter alia*, joinder for trial appropriate where charges brought in two, separate matters flowed from the same events and were part of the same story).

In this regard, as we shall discuss more fully, *infra*, the evidence of each case would have been admissible in the others to enable the jury to glean a full picture of the circumstances surrounding the Terroristic Threats and Intimidation of Witnesses or Victims charges.  Importantly, the fact that the jury was able to separate the three cases is evinced by its verdict of not guilty for the Terroristic Threats counts at docket CP-14-CR-0016-2013.

- 10 -

Moreover, while Appellant stresses in his brief that the motion court's Opinion and Order of August 30, 2013, did not specify what details pertaining to the murder may be entered into evidence at trial, he acknowledged the court did indicate it did not anticipate that the specific details surrounding the killing would be admissible. Brief for Appellant at 8 citing N.T. Hearing, 12/4/13, at 8-9. Appellant cites to numerous statements made by the prosecution and witnesses in response to questions the Commonwealth posed which he claims disclosed such information, "over objection" and which he asserts were prejudicial and irrelevant at trial. Brief for Appellant at 9-10. However, a review of the record reveals that Appellant did not object contemporaneously to the referenced statements and questions on the basis of relevancy or upon any other grounds at his trial on November 13, 2014. As such, the trial court was not presented with an opportunity to determine whether details surrounding the killing and manner of death were admissible; therefore, we consider this sub claim waived for Appellant's failure to assert a timely objection. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Rule 302(a) has [never] been interpreted as meaning that issues may be raised **at any time** during the lower court proceedings in order to preserve them. Rather, it is axiomatic that issues are preserved when objections are made timely to the error or offense." *Commonwealth v. Baumhammers*, 599 Pa. 1, 24, 960 A.2d 59, 73

(2008) (emphasis in original). For the foregoing reasons, we find the motions court did not abuse its discretion in denying Appellant's motion to sever.[4]

Appellant next challenges the trial court's permitting the admission of certain prior bad acts evidence pertaining to the 1989 murder during trial pursuant to Pa.R.E. 404(b). Appellant claims the admission of such irrelevant and prejudicial evidence deprived him of a fair trial. It is axiomatic that:

> [q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. ...

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1036 (Pa.Super. 2014) (citations and quotations omitted).

Pa.R.E. 404, entitled Character Evidence; Crimes or Other Acts, states in relevant part:

\* \* \*

**(b) Crimes, Wrongs or Other Acts.**

---

[4] To the extent Appellant attempts to argue "severance of the complaints was mandatory under a venue-jurisdiction analysis," Brief for Appellant at 11-12, we find this claim waived for his failure to raise this specific argument in his Pa.R.A.P.1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

(1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\*\*\*

Pa.R.E. 404(b)(1),(2). As this Court recently reiterated:

[w]hile evidence of prior bad acts is not admissible to show criminal propensity, evidence of other crimes may be admissible if it is relevant to show some other legitimate purpose. ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015). An exception to Rule 404(b) exists that permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts. ***Commonwealth v. Solano***, 129 A.3d 1156, 1178 (Pa. 2015). This exception is commonly referred to as the res gestae exception. ***Id***.

***Commonwealth v. Ivy***, 2016 WL 4413239, at \*7 (Pa.Super. Aug. 19, 2016).

In the matter *sub judice,* while Appellant acknowledges that "some aspects of the murder would have to be revealed as the new charges were tangentially related to the murder (persons named in threatening letters were all involved in [Appellant's] prosecution for the murder)[,]" he avers the Commonwealth's argument at the hearing on his suppression motion that the matters were "inextricably intertwined" failed to show how such evidence of the murder tended to demonstrate Appellant's opportunity to

communicate a threat, as he had been imprisoned when the letters were penned and mailed, and to illustrate his preparation for the crime of Terroristic Threats. Brief for Appellant at 13, 15-16. Appellant further asserts that the resultant prejudice he suffered from the admission of testimony regarding the specific details pertaining to Appellant's killing of his wife outweighed any relevance of such evidence in the November 13, 2014, trial. *Id*. at 13.

Upon our review of the record, we disagree and in doing so repeat that Appellant's failure to lodge a timely, specific objection to references or testimony concerning the specific details of the murder resulted in his waiver of a challenge to the admission of such evidence herein. We further rely upon the sound reasoning of the trial court which found that the prior bad acts evidence pertaining to the murder provided the factual basis for the Terroristic Threats and Intimidation of Witnesses or Victims charges. Specifically, the trial court explained:

> [Appellant] pled guilty to murdering his wife in 1989 in Berks County, Pennsylvania. While [Appellant] was incarcerated, he penned two (2) letters and a "hit list." The first letter and "hit list" named persons involved in the murder case and described methods for torturing and killing said persons. The second letter also named persons related to the murder case and contained statements regarding killing said persons and their entire families. While [Appellant] was being held at Centre County Correctional Facility for the charges stemming from the letters and "hit list," [Appellant] made an unmonitored phone call to his daughter in which [Appellant] made threatening statements to her and regarding [Appellant's] brother because of [Appellant's] brother's testimony against [Appellant]. The [c]ourt properly found that [Appellant's] murder case and facts thereof, which

constituted the prior bad acts evidence, were all part of a chain of events of various crimes that occurred which were inextricably interrelated. Since the victims of the above-captioned matter were involved in [Appellant's] murder case and [Appellant's] statements regarding the victims were related to their involvement with [Appellant's] murder case, the admission of the evidence was relevant to show motive, intent, and the natural development of the history of the case. Additionally, the inextricable interrelation of the evidence to the crimes causes the probative value of said evidence to outweigh any potential prejudice.

Trial Court Opinion and Order, filed 11/6/15, at 4. As such, we find this claim lacks merit.

While in his third issue Appellant asserts the highly prejudicial facts of the murder case "confused, mislead and inflamed the emotions of the jury," Brief for Appellant at 2, Appellant fails to develop a meaningful argument with citation to relevant, legal authority on this claim in the body of his brief. Instead, he makes a bald allegation of prejudice and asks rhetorical questions. *See* Brief for Appellant at 13, 16.

The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

*Coulter v. Ramsden*, 94 A.3d 1080, 1088–89 (Pa.Super. 2014), *appeal denied*, ___ Pa. ____, 110 A.3d 998 (2014) (Table) (internal citations and

quotation marks omitted). Therefore, we find Appellant waived this claim for lack of development. *Umbelina v. Adams*, 34 A.3d 151, 161 (Pa.Super. 2011), *appeal denied*, 47 A.3d 848 (Pa. 2012).

Notwithstanding, even if Appellant properly had developed his argument, we would find it to be meritless. As stated previously, the fact that the jury acquitted Appellant of all charges stemming from the threats set forth in the letters reveals it was not so prejudiced against him for killing his wife so as to deny him a fair trial on the remaining charges. No relief is due.

Appellant next avers the trial court erred when it denied his motion for judgment of acquittal at the conclusion of the Commonwealth's case in chief pertaining to the charges docketed at CP-14-CR-0016-2013. Before addressing the merits of this argument, we note our well-settled standard of review:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Abed*, 989 A.2d 23, 26 (Pa.Super. 2010). The subsection of the crime of Terroristic Threats with which Appellant was charged is defined as follows:

**Terroristic threats**

- 16 -

> **(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1) commit any crime of violence with intent to terrorize another;
>
> ***

18 Pa.C.S. A. § 2706(a)(1).  In addition,

> For a defendant to be convicted of terroristic threats, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." ***Commonwealth v. Tizer***, 454 Pa.Super. 1, 684 A.2d 597, 600 (1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." ***In re J.H.***, 797 A.2d 260, 262 (Pa.Super. 2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Tizer***, 684 A.2d at 600.

***Commonwealth v. Beasley***, 138 A.3d 39, 46 (Pa.Super. 2016).

Despite noting he was acquitted of the charges brought in what he terms the "letters case" at CP-14-CR-0016-2013, Appellant posits that the jury was called upon to consider evidence which "fell outside the statute of limitations" because there was no evidence presented to demonstrate he had mailed the letters within the necessary timeframe or that an applicable exception thereto applied. [5]  Appellant claims the trial court's failure to enter

---

[5] A prosecution for Terroristic Threats must be commenced within five years after the offense is committed. See 42 Pa.C.S.A. § 5552.  The statute of limitations further defines when a crime is committed as "either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the

a not guilty verdict for this reason was prejudicial to him in connection with the charges docketed at CP-14-CR-708-2013 and CP-14-CR-711-2013 of which he was convicted, because the bulk of the evidence the Commonwealth presented at trial pertained to the letters case. Brief for Appellant at 16. In addition, Appellant maintains the criminal information alleged that the offenses occurred between January 1, 1996, through December 19, 2012, which "created an impossible burden for Appellant to offer an alibi defense and violated his constitutional rights." Brief for Appellant at 18-19. Appellant concludes that all charges related to the letters case should have been resolved by the trial court's granting of Appellant's motion for judgment of acquittal. *Id*.

After the Commonwealth rested, Appellant made two motions on the record for a judgment of acquittal. N.T. Trial, 11/13/14, at 260. When arguing his motion for judgment of acquittal pertaining to the "hit list" letter, Appellant asserted the Commonwealth presented no evidence the correspondence had been written, mailed and received on or after December 12, 2007, which would have placed it within the five-year statute of limitations for prosecuting a charge of Terroristic Threats under 42 Pa.C.S.A. § 5552. *Id*. at 261. In response, the Commonwealth noted that Appellant had informed Trooper Gretchen Swank that he penned the correspondence when his mother was sick after his parole hearing, and parole hearings had

complicity of the defendant therein is terminated. Time starts to run on the day after the offense is committed." 42 Pa.C.S.A. § 5552(d).

occurred on both December 4, 2008, and on November 8, 2010. Appellant's mother died on January 30, 2010, and Russell Richard's discovery of the letters thereafter fell within the five-year statute of limitations period. *Id*. at 280. Moreover, the Commonwealth indicated its belief that this discovery resulted in the letters being brought to police who communicated the contents to the victims which constituted the completion element of the crime. *Id*. at 262-63, 280. The Commonwealth urged the trial court to instruct the jury accordingly and permit it, as the factfinder, to decide the factual question as to the elements of the crime, which 42 Pa.C.S.A. 5552(d) provides is committed when each element occurs. *Id*. at 265.

At the conclusion of oral argument, the trial court indicated it had reviewed this Court's previously filed Memorandum Opinion filed June 13, 2013, wherein we found the statute of limitations had begun when Appellant sent the letter, not when its contents was communicated to the victims by the police**.** *Id*. at 283 referencing ***Commonwealth v. Richard*** 105 A.3d 801 (Pa.Super. 2003) (unpublished memorandum). Notwithstanding, the trial court credited the Commonwealth's argument that there was circumstantial evidence Appellant had written the "hit list" letter within the relevant period. *Id*. As such, the trial court denied the motion for acquittal pertaining to that letter, but granted the motion on the correspondence that had been referred to as the "hi mom letter," upon finding no evidence to show it had been written after December 13, 2007. *Id*.

Following our review of the record, we discern no error in this regard. Moreover, for the reasons stated *supra*, we find no error in the trial court's rationale and determination that evidence of the murder would have been admissible to prove the charges of which Appellant was convicted, even had the trial court granted Appellant's motion. Accordingly, this issue entitles Appellant to no relief.[6]

Appellant next purports to argue the verdict was against the weight of the evidence and that there was insufficient evidence to support the verdict. Brief for Appellant at 19-21. However, these two claims are distinct. **See Commonwealth v. Widmer**, 560 Pa. 308, 318-19, 744 A.2d 745, 751-52 (2000) (discussing the distinction between a challenge to the sufficiency of the evidence and a claim that the verdict is against the weight of the evidence). It is also well-settled that a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance either in a post-sentence motion, by written motion before sentencing, or orally prior to sentencing. **See** Pa.R.Crim.P. 607(A); **Commonwealth v. Griffin**, 65 A.3d 932, 938 (Pa.Super. 2013).

---

[6] To the extent Appellant argues the date of the offenses was not fixed with reasonable certainty in the criminal information, we find Appellant has waived this issue for failure to raise it before the trial court when presenting his motion for judgment of acquittal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

- 20 -

We review Appellant's challenge to the sufficiency of the evidence as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559–60 (Pa.Super. 2011) (*en banc*).

Moreover,

> [a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, "but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super. 2006), appeal denied, 590 Pa. 655, 911 A.2d 933 (2006). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1055 (2013). "Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight

with all the facts is to deny justice." *Id.* (citation omitted). "It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.*

The Supreme Court has provided the following guidance for an appellate court's review of the record when the appellant challenges the weight of the evidence:

> In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail. It is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.

> To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion. *Id.* at 1056.

*Interest of J.B.*, 2016 WL 4547955 at *10-11 (Pa.Super. Sept. 1, 2016).

Before we consider the merits of the aforementioned claims, we must determine whether Appellant has properly preserved them for our review. Appellant challenged both the sufficiency and the weight of the evidence to support his convictions in a timely post-sentence motion which the trial court denied, *See* Sentence Motions, filed August 14, 2015, at 3-4, ¶¶ 11-12;

therefore, he properly raised this weight of the evidence challenge before the trial court. Notwithstanding, although the aforesaid caselaw stresses that challenges to the weight and sufficiency of the evidence are distinct, Appellant conflated them in his Rule 1925(b) statement with the focus being upon the sufficiency of the evidence as follows:

> 6. The lower court committed an error of law and abuse of discretion by accepting the verdict which was against the weight of the evidence and insufficient to support the convictions, resulting in a miscarriage of justice. Specifically, the evidence of what [Appellant] said on the telephone to support the charges at dockets CP-14-CR-708-2013 and CP-14-CR-711-2013 (Terroristic Threats and Intimidation of Witnesses) was insufficient to sustain a conviction.

"Concise Statement of Matters Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)]," filed 12/29/15, at ¶ 6. As such, this challenge to the weight of the evidence is arguably waived for failure to concisely identify it. *See* Pa.R.A.P. 1925(b)(4)(ii); however, to the extent Appellant attempted to raise this issue in his Rule 1925(b) statement and intersperses weight of the evidence references within his sufficiency of the evidence argument in his brief, we will discuss the merits of this claim below.

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a

reasonable doubt." ***Commonwealth v. Stiles***, 2016 WL 4035610 at *12 (Pa.Super. July 19, 2016) (internal quotation marks omitted).

As we noted *supra*, Appellant averred that the evidence of what he said to his daughter on the telephone was insufficient to sustain his Terroristic Threats and Intimidation of Witnesses or Victims convictions. Although Appellant did not specify the allegedly unproven element or elements of his convictions in his Rule 1925(b) statement, we find this statement was sufficient to preserve a challenge to the sufficiency of the evidence to sustain his convictions, and we turn to a consideration of whether this issue is meritorious. ***See Commonwealth v. Laboy***, 594 Pa. 411, 936 A.2d 1058 (2007) (review of sufficiency of the evidence claim may be granted in a relatively straightforward case where record is not overly burdensome and the trial court discerned the claim and thoroughly addressed it in its opinion).

The elements of the crime of Terroristic Threats have been set forth above, and the crime of Intimidation of Witnesses or Victims reads as follows:

§ 4952 Intimidation of witnesses or victims

**(a) Offense defined.**—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
    (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any

information, document or thing relating to the commission of a crime.

    (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

    (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

    (4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

    (5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

    (6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S.A. § 4952(a).

Although Appellant's argument blends the concepts of sufficiency and weight of the evidence, he essentially posits the verdict on the Intimidation of Witnesses or Victims charge was against the weight of the evidence because the record is devoid of evidence he knew that the content of his conversation with Robyn Apgar would be relayed to Russell Richard or intended such a result. Brief for Appellant at 20. In addition, he avers the testimony of his daughter and brother should be given "little weight given lack of credibility due to their resentment towards [Appellant] and their motives established at trial." *Id*. at 21.

At Appellant's jury trial, Russell Richard stated that he had testified against his brother at the preliminary hearing held on April 2, 2013, regarding the "hit list" letter he had uncovered at his mother's home in 2010. N.T. Trial, 11/13/14, at 99-101. Mr. Richard acknowledged that his

- 25 -

testimony was an integral part of the prosecution, and that if the matter were to proceed to trial, he would be a testifying witness. *Id*. at 101. Mr. Richard further explained that two days after the preliminary hearing, he received a call from his niece Robyn who was "pretty shook up" and relayed to Mr. Richard that Appellant had threatened him in a phone call to her. *Id*. at 102-105. Following this conversation, Mr. Richard became "definitely more fearful of him, because [he] now exactly what—I knew would happen had happened. He made me number one." *Id*. at 105-06. Mr. Richard took the threat seriously. *Id*. at 106.

Robyn Apgar explained that she was at work on April 4, 2013,[7] when Appellant called her from the Centre County Correctional Facility and indicated he was very angry with Richard Russell. *Id*. at 246. He stressed that he had no intention of dying in prison and that he would hurt anyone who got in his way, including the rest of the family. Ms. Apgar considered this to be a threat directed at her and feared for her safety. *Id*. at 246-47. Ms. Apgar took his words "very seriously" because Appellant engaged her in a "very serious conversation where he was mad." *Id*. at 248-49.

Ms. Apgar related that when Appellant asked her why Russell Richard was doing this to him, she indicated Russell Richard was afraid of Appellant and wanted to protect himself and his family. In response, Appellant indicated Mr. Richard should be afraid of him and stressed that "when you

---

[7] The Commonwealth erroneously questioned her as to what happened on April 4, 2012. *Id*.

mess with a bear, you will become bear poop." *Id*. at 247. Appellant stated he wanted Russell Richard to "die a slow painful death" and that he would "pay for messing with him and for doing all of this to him." *Id*. at 248.

Ms. Apgar believed that through his words, Appellant was threatening Russell Richard and her with a crime of violence. *Id*. at 249. Ms. Apgar indicated that Appellant scared her and that "he's very terrifying and its scary when you get these phone calls when he's in this state of mind." *Id*. at 2521. After her conversation with Appellant, Ms. Apgar immediately contacted Russell Richard and notified the police about the threats Appellant had directed. *Id*. at 249.

Mr. Kevin Jeirles testified that he was Appellant's counselor on the day he called Ms. Apgar from an unrecorded phone. *Id*. at 233. Mr. Jeirles explained that before he stepped out of the room briefly during the conversation, he had heard Appellant comment that he hoped his brother would die a slow death. *Id*. at 233-34. While initially Appellant's voice was a "loving" and "caring" tone, his demeanor was different when Mr. Jeirles reentered the room, though he would not describe his tone as angry. *Id*. at 234-36.

Appellant testified in his own defense that he wrote many letters to his mother over the years, and that after 2007 none of them had a negative tone because he was concerned for her health. *Id*. at 294-295. He indicated that the "hit list" letter was sealed because no one was supposed to read it,

as it was a form of "journaling," an activity in which he routinely engaged at the suggestion of psychologists at the prison. *Id*. at 299, 303-04. He further explained that when he called Ms. Apgar, he was doing so to "say goodbye" and to tell his daughter he loved her because he was "depressed," "beat," and wanted to "surrender." *Id*. at 300. He stated he never intended to terrorize Ms. Apgar or to cause her to fear for her safety, nor did he intend for her to relay the contents of the phone call to Russell Richard. *Id*. at 301-02.

Viewing the aforesaid testimony in a light most favorable to the Commonwealth as the verdict winner, as we are required to do by our standard of review, we conclude the Commonwealth presented sufficient evidence from which the jury convicted Appellant of Terroristic Threats and Intimidation of Witnesses or Victims. The jury's verdict reveals it credited the testimony of Ms. Apgar and Mr. Russell Richard that Appellant intentionally threatened them during the April 4, 2013, phone call and that he intimidated and/or attempted to intimidate Russell Richard. This finding is bolstered when such testimony is viewed in the context of the properly admitted testimony of witnesses identified in the "hit list" letter.

Also, in considering whether the verdicts were against the weight of the evidence, the trial court noted that:

> The Commonwealth presented the testimony of the victims, the letters, and the "hit list" at trial. [Appellant] testified his statements were not threatening and he had no intention of the statements being conveyed. The jury chose to credit the

- 28 -

evidence presented by the Commonwealth over the evidence presented by [Appellant]. It is within the jury's province to determine the credibility of the witnesses and to weight the evidence. Based on the evidence and testimony admitted, the jury could have believed [Appellant] was guilty of the conduct alleged and thus the verdict was not against the weight of the evidence.

Trial Court Opinion and Order, filed 11/6/15, at 5-6.

Upon our review of the record, we conclude that the trial court did not palpably abuse its discretion in reaching its decision. *See Interest of J.B*, *supra*. Appellant essentially asks this Court to invade the trial court's discretion which we cannot do. *Id*. This claim does not merit relief.

In his final issue, Appellant challenges the trial court's denial of his motion to modify his sentence. Appellant contends that because he was acquitted of all charges docketed at CP-14-CR-0016-2013, the trial court afforded him credit for time served only from April 10, 2013, (849 days) although he spent a total of 966 days in jail prior to sentencing commencing with his arrest and incarceration on December 13, 2012. Appellant reasons that just as the trial court found the three criminal informations should be consolidated for trial because they were "inextricably intertwined" so to should that argument apply to his credit for time served. Brief for Appellant at 23.

Appellant cites to no authority to support his proposition. To the contrary, as Appellant indicates in his brief, 42 Pa.C.S.A. § 9760(1) provides that:

(1) Credit against the maximum term and any minimum term shall be given to the defendant **for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based**. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1) (emphasis added). In light of the foregoing, this Court has stated "a defendant shall be given credit for any days spent in custody prior to the imposition of sentence, but only if such commitment is on the offense for which sentence is imposed. Credit is not given, however, for a commitment by reason of a separate and distinct offense." ***Commonwealth v. Clark***, 885 A.2d 1030, 1034 (Pa.Super. 2005) ***See also Commonwealth v. Infante***, 63 A.3d 358, 367 (Pa.Super. 2013) (citation omitted).

The trial court found that Appellant was not entitled to credit for time served from December 13, 2012, to April 10, 2013, because the latter date was the time at which he was arrested on the charges of which he ultimately was convicted. Trial Court Opinion and Order, filed 11/6/15, at 7. Indeed, as the Commonwealth notes, Appellant could not be credited for time spent in jail on the charges of Terroristic Threats and Intimidation of Witnesses or Victims prior to April 10, 2013, for he had not yet committed those crimes. ***See*** Brief for Appellee at 26. The trial court appropriately credited Appellant for 849 days of time served; therefore, this issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016