J-S16042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL U. PETERSON, | |
| Appellant | No. 1537 WDA 2016 |

Appeal from the Judgment of Sentence June 2, 2016
in the Court of Common Pleas of Westmoreland County
Criminal Division at Nos.: CP-65-CR-0000981-2014
CP-65-CR-0004070-2014

BEFORE: MOULTON, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED APRIL 05, 2017**

Appellant, Michael U. Peterson, appeals from the judgment of sentence imposed following his jury conviction of two counts of possession of a controlled substance, two counts of possession with intent to deliver a controlled substance, possession of drug paraphernalia, drug delivery resulting in death, and criminal conspiracy[1] at Docket Numbers 981-2014 and 4070-2014.[2]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(16), (30), and (32); 18 Pa.C.S.A. §§ 2506(a) and 903, respectively.

[2] The cases were consolidated for trial.  The charges arose from Appellant's participation in two drug transactions at different locations on February 5, 2014.  (*See* Trial Court Opinion, 9/28/16, at 1-2; Verdict Slips, 1/15/16).

We take the following relevant facts and procedural history from our independent review of the certified record. On February 5, 2014, at approximately 3:00 p.m., Appellant asked his friend, Garrin Ullrich-Stiffler, to drive him, in Appellant's van, to a Sheetz gas station. At the Sheetz, Appellant met his cousin, Sam Christner, and sold him five bags of heroin for $50.00. Appellant also sold Ullrich-Stiffler three bags of heroin. Each of the bags was branded with either "Rich Gang," "Tuna Fish," or "ESPN." (N.T. Trial, 1/12/16, at 129).

Appellant then asked Ullrich-Stiffler to drive to a CoGo's gas station, where they met Nicole Bianco, and Appellant sold her bags of drugs. Appellant grew suspicious upon observing a police vehicle, and he directed Ullrich-Stiffler to drive Bianco to her apartment. As their van turned down the alley behind her apartment building, Police Officer Reginald Harbarger, Jr., of the City of Greenburg Police Department, initiated a traffic stop.

Officer Harbarger approached the van and the occupants complied with his request to provide identification and registration information. As Officer Harbarger ran this information, he observed Appellant repeatedly reaching around his seat, which signaled to the officer that he could be reaching for a weapon or concealing an item. Officer Harbarger placed Appellant under arrest, and read him **Miranda**[3] warnings. He asked Appellant to consent to

_____

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

a search of his vehicle, and Appellant obliged. Police recovered four hypodermic needles, a blue string, a metal spoon, and a digital scale, from the center console of the van. When Officer Harbarger asked Appellant who owned the drug paraphernalia, Appellant responded: "it's not mine but I will take the hit." (*Id.* at 207). A search of Appellant's person revealed a plastic bag containing cocaine, nineteen bags of heroin marked "Rich Gang," "Tuna Fish," or "ESPN," an empty bag marked "Paradise Island," and $248.00 in cash. (*Id.* at 210; *see id.* at 205-06, 209).

At approximately 5:00 p.m., Sam Christner's girlfriend, Dee Ann Pruett, arrived at the residence she shared with him, and found him sitting unconscious on the bathroom floor. Christner appeared gray in color, his eyes were closed, and a syringe was on the floor beside him. Pruett called 911, and Christner was transported to the hospital. Efforts to revive Christner were unsuccessful, and he was pronounced dead at 5:31 p.m. Two bags of heroin stamped "Rich Gang" were found in his front pants pocket. (N.T. Trial, 1/13/16, at 356). Toxicology test results later showed heroin, morphine (a breakdown product of heroin), codeine (another breakdown product), Benadryl, and alcohol in Christner's system, with high levels of heroin and morphine.

Pruett informed police that, at approximately 2:40 p.m. that afternoon, Christner borrowed $40.00 from her, and told her that he was going to visit Appellant. Police searched Pruett's vehicle and the couple's residence, and the only evidence that they found associated with Christner's

death was the used syringe and the two bags of heroin recovered from his person.

On February 6, 2014, police questioned Ullrich-Stiffler about the events of the previous day. Ullrich-Stiffler initially stated that he and Appellant went to Sheetz to find out about a construction job, and that he was not aware of what transpired between Appellant and Christner. After police returned to Ullrich-Stiffler's home with surveillance video from Sheetz, he admitted that he was driving Appellant around to conduct drug transactions, and that Appellant sold drugs to Christner.

Police interviewed Appellant later that day and gave him **Miranda** warnings. Appellant admitted that the nineteen bags of heroin and the cocaine found on his person belonged to him. Appellant indicated that the needles, spoon, string, and bag marked "Paradise Island" belonged to Ullrich-Stiffler, and he explained that, in exchange for heroin, Ullrich-Stiffler sometimes drove him around to sell drugs. Appellant admitted that he sold Christner five bags of heroin stamped "Rich Gang," "Tuna Fish," or "ESPN," the previous day for $50.00 at the Sheetz, and that Ullrich-Stiffler witnessed the transaction. (N.T. Trial, 1/13/16, at 423; **see id.** at 421-23).

Appellant proceeded to a five-day jury trial on January 11, 2016. On January 15, 2016, the jury convicted Appellant of the above-stated offenses. On June 2, 2016, the trial court sentenced Appellant, at both docket numbers, to an aggregate term of not less than eight nor more than sixteen years' incarceration. Appellant filed a timely post-sentence motion, which

the trial court denied by opinion and order entered September 28, 2016, following a hearing and briefing on the matter. This timely appeal followed.[4]

Appellant raises the following questions for our review:

> 1. Whether the [trial court] erred in making certain evidentiary rulings at trial[?]
>
> 2. Whether the [trial court] erred [in] denying Appellant's requested jury instruction[?]
>
> 3. Whether [] Appellant was entitled to relief for discovery violations by the Commonwealth[?]
>
> 4. Whether the Commonwealth presented sufficient evidence to sustain a verdict of guilty[?]

(Appellant's Brief, at 4).

In his first issue, Appellant claims the trial court erred in making evidentiary rulings with respect to the testimony of three witnesses, the Commonwealth's expert forensic pathologist, Dr. Cyril Wecht; Appellant's wife, Bethany Peterson; and Appellant's expert toxicologist, Dr. Michael Zemaitis. (*See* Appellant's Brief, at 10-14). Appellant argues that the court improperly: limited cross-examination of Dr. Wecht, permitted the Commonwealth to "badger" Mrs. Peterson, and limited the testimony of Dr. Zemaitis. (*Id.* at 12; *see id.* at 10-14). This issue is waived.

---

[4] The court did not order Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On October 20, 2016, the court entered an opinion referring this Court to its opinion and order filed September 28, 2016, for the reasons for its decision. *See* Pa.R.A.P. 1925(a).

This Court has emphasized that we "will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Richard*, 150 A.3d 504, 514 (Pa. Super. 2016) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Id.* at 513-14 (citation omitted); *see also* Pa.R.A.P. 2119(a)-(b).

Here, Appellant's argument in support of his multiple claims of trial court error includes only one citation to legal authority for the boilerplate proposition that evidence is admissible if it is relevant and not unduly prejudicial. (*See* Appellant's Brief, at 10). Appellant does not discuss the legal standards applicable to each evidentiary ruling in light of his specific allegations of error. (*See id.* at 10-14). Therefore, Appellant's first issue is waived. *See Richard*, *supra* at 513-14.

In his second issue, Appellant argues the trial court erred in denying his proposed jury instructions relating to the drug delivery resulting in death charge. (*See* Appellant's Brief, at 14-16). Appellant contends that the court's instructions did not sufficiently advise the jury of the requirement of "but-for causation," or the appropriate *mens rea* for the offense. (*Id.* at 16). This issue is waived.

It is well-settled that "[a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so

results in waiver." ***Commonwealth v. Moury***, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted). Our Supreme Court

> has held, in the criminal trial context, the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

***Commonwealth v. Hitcho***, 123 A.3d 731, 756 (Pa. 2015) (citation and internal quotation marks omitted).

Here, the trial court and the Commonwealth maintain that Appellant waived his jury instruction issue on appeal for his failure to object. (***See*** Trial Ct. Op., at 17; Commonwealth's Brief, at 15-16). Our review of the record confirms that, prior to the parties' closing arguments, the trial court conducted an on-the-record charging conference in chambers, at which it denied Appellant's proposed points for charge at issue, and defense counsel did not object. (***See*** N.T. Trial, 1/15/16, at 672-80). After the court gave the instructions to the jury, Appellant did not lodge any objection. (***See id.*** at 779-80). In fact, when the court questioned the parties as to whether there were any instructions it neglected to give, defense counsel responded "No, Your Honor." (***Id.*** at 779). Therefore, Appellant waived his challenge to the trial court's instructions. ***See Hitcho***, ***supra*** at 756 (declining to review appellant's challenge to jury instruction where he failed to object to charge).

In his third issue, Appellant alleges discovery violations by the Commonwealth, relating to a second syringe and an aluminum foil pipe found by Dee Ann Pruitt in her home after Christner's death. (**See** Appellant's Brief, at 17-18). Appellant claims that these items should have been tested for substances, to help explain what Christner had ingested. (**See id.** at 17). Appellant further contends that this is "a classic case of spoliation of evidence." (**Id.**). This issue also is waived.

While we recognize that Appellant may be attempting to make an unconventional **Brady**[5] claim by arguing spoliation of evidence, we reiterate, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant[,]" and an appellant must properly develop arguments with citation to pertinent legal authority. **Richard**, **supra** at 514 (citation omitted); Pa.R.A.P. 2119(a)-(b).

Here, in his cursory argument spanning slightly more than one page, Appellant fails to cite **Brady** or any other relevant legal authority to support his claim. Instead, he relies only on a **civil products liability** case involving the defective design of a motor vehicle. (**See** Appellant's Brief, at 18 (citing **Parr v. Ford Motor Co.**, 109 A.3d 682 (Pa. Super. 2014) (*en banc*), *appeal denied*, 123 A.3d 331 (Pa. 2015), *cert. denied*, 136 S.Ct. 557 (2015))). Additionally, although Appellant appears to base his argument on

_____

[5] **Brady v. Maryland**, 373 U.S. 83 (1963).

Dee Ann Pruitt's testimony, he neglects to direct this Court to the pertinent portions of the certified record, in violation of Pa.R.A.P. 2119(c). Therefore, Appellant's undeveloped third issue is waived. *See Richard*, *supra* at 513-14.

In his fourth issue, Appellant challenges the sufficiency of the evidence supporting his drug delivery resulting in death conviction. (*See* Appellant's Brief, at 18).[6] Specifically, he disputes the elements of intent and causation. Appellant argues, "the intent state of mind [must] be applied to all material elements, such that it must be proven that it was the actor's intention that the victim of a drug delivery [resulting] in death actually die." (*Id.* at 15; *see id.* at 14, 18). Appellant also maintains that "but-for" causation was not established, because the potency of the heroin and the exact substances Christner ingested is unknown, and other substances that were not tested for could have contributed to his death. (*See id.* at 18). This issue does not merit relief.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

---

[6] In the sufficiency of the evidence section, Appellant also raises a challenge to his possession of drug paraphernalia conviction. (*See* Appellant's Brief, at 18-19). However, Appellant does not attempt to develop a sufficiency argument regarding this conviction, and instead raises, in a one-paragraph argument devoid of citation to any legal authority, a due process claim relating to the criminal information filed against him. (*See id.* at 19). This undeveloped argument is waived. *See* Pa.R.A.P. 2119(a)-(c).

crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Giordano*, 121 A.3d 998, 1002-03 (Pa. Super. 2015),

*appeal denied*, 131 A.3d 490 (Pa. 2016) (citations omitted).

The drug delivery resulting in death statute provides in pertinent part

as follows:

**(a) Offense defined.—**A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a) (footnote omitted).

"The crime described above consists of two principal elements: (i)

[i]ntentionally administering, dispensing, delivering, giving, prescribing,

selling or distributing any controlled substance or counterfeit controlled

substance and (ii) death caused by ('resulting from') the use of that drug."

- 10 -

*Commonwealth v. Kakhankham*, 132 A.3d 986, 991–92 (Pa. Super. 2015), *appeal denied sub nom.* *Commonwealth v. Somwang Laos Kakhankham*, 138 A.3d 4 (Pa. 2016) (footnote omitted).

With respect to the *mens rea* for the first element of the offense,

[t]he statute is as clear and direct as a statute can be. The mental state required is "intentionally" doing one of the acts described therein, namely, administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substances. Additionally, the Crimes Code defines "intentionally" as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>
> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

Thus, under the statute, the first element of the crime is met if one "intentionally" administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substances. . . .

*Id.* at 992.

Regarding the level of causation necessary for guilt,

The statute uses the phrase[] "results from," a concept which is defined also in the Crimes Code. Section 303 of the Crimes Code, in relevant part, provides:

J-S16042-17

**Causal relationship between conduct and result**

> **(a) General rule.**—Conduct is the cause of a result when:
>
> (1) it is an antecedent but for which the result in question would not have occurred; and
>
> (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

> 18 Pa.C.S.A. § 303(a). The statute, therefore, is clear as to the level of causation. It requires a "but-for" test of causation. Additionally, criminal causation requires the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

*Id.* at 992–93 (footnotes, case citations and some quotation marks omitted).

With regard to the *mens rea* requirement for the second element of section 2506, the ***Kakhankham*** Court rejected an argument, identical to Appellant's, that the defendant must intend to cause the death of another, stating "such a reading would make Section 2506 superfluous, for intentionally causing the death of another person is already criminalized (*i.e.*, first degree murder)." ***Id.*** at 993 (record citation omitted). Instead, the Court concluded that:

> Section 302(c) provides the *mens rea* requirement for the second element of Section 2506, *i.e.*, death must be at least "reckless." 18 Pa.C.S.A. § 302(c).
>
> The Crimes Code defines "recklessly" as follows:
>
> > A person acts recklessly with respect to a material element of an offense when he consciously

- 12 -

disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Additionally, when recklessly causing a particular result is an element of an offense,

the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

(1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S.A. § 303(c).

*Id.* at 995.

Here, Ullrich-Stiffler testified that on February 5, 2014, he drove Appellant to a Sheetz gas station and observed Appellant sell Christner five bags of heroin for $50.00. (*See* N.T. Trial, 1/12/16, at 120, 124, 127). Appellant also sold Ullrich-Stiffler three bags of heroin, and each of the bags was branded with either "Rich Gang," "Tuna Fish," or "ESPN." (*Id.* at 129;

*see id.* at 128). Police review of Appellant's text messages from that day reflect that Christner "want[ed] five if [Appellant had] it," and Sheetz videotape surveillance footage showed Appellant's van at the scene during the relevant time period. (N.T. Trial, 1/14/16, at 445; *see also* N.T. Trial, 1/12/16, at 150-51; N.T. Trial, 1/13/16, at 412-13).

Less than two hours after Appellant sold Christner the heroin, Dee Ann Pruett found Christner unconscious on the bathroom floor, appearing gray in color, with a used syringe next to his body. (*See* N.T. Trial, 1/12/16, at 129; N.T. Trial, 1/13/16, at 294-97, 351, 364). Two bags of heroin marked "Rich Gang" were in Christner's pants pocket. (N.T. Trial, 1/13/16, at 356).

Police recovered nineteen packets of heroin, marked with either "Rich Gang," "Tuna Fish," or "ESPN," from Appellant's person. (N.T. Trial, 1/12/16, at 210; *see id.* at 209). During a police interview, Appellant admitted that these heroin packets belonged to him, that he sold Christner five bags of heroin marked either "Rich Gang," "Tuna Fish," or "ESPN" at the Scheetz, and that Ullrich-Stiffler witnessed the transaction. (N.T. Trial, 1/13/16, at 423; *see id.* at 421-23).

Dr. Wecht, the forensic pathologist who performed Christner's autopsy, testified that toxicology reports showed high levels of heroin and morphine in his system. (*See* N.T. Trial, 1/13/16, at 234, 248). Dr. Wecht testified that the cause of death was acute combined drug toxicity, with the principal factor a very large amount of heroin breaking down into morphine. (*See id.* at 249). He stated that the level of alcohol and Benadryl in Christner's

system was insignificant, and did not contribute to his death. (*See id.* at 249-50, 263). Dr. Wecht opined that "[b]ut for the presence of the heroin in his system," Christner would not have died. (*Id.* at 249; *see id.* at 250, 262). He further opined that if any other substances were present in Christner's system in quantities sufficient to contribute to his death, the toxicology screen would have identified them. (*See id.* at 250-51).

After review of the record, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *see Giordano*, *supra* at 1002, we conclude that the evidence clearly shows Appellant intentionally sold the heroin to Christner, that but for this sale, Christner would not have died, and that Appellant acted recklessly with regard to Christner's death. *See Kakhankham*, *supra* at 992-93, 995. As the *Kakhankham* Court noted, "[i]t is certain that frequently harm will occur to the buyer if one sells heroin. . . . While not every sale of heroin results in an overdose and death, many do." *Id.* at 995-96 (citation omitted). Therefore, Appellant's final issue does not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/5/2017