J-S24041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIELLE MARIE FALCON | : | |
| | : | |
| Appellant | : | No. 1730 WDA 2016 |

Appeal from the Judgment of Sentence October 11, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0002450-2013

BEFORE:   PANELLA, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 15, 2017**

Appellant Danielle Marie Falcon appeals from the judgment of sentence entered by the Court of Common Pleas of Westmoreland County after a jury convicted Appellant of attempted murder, aggravated assault, and recklessly endangering another person.  Appellant contends that there was insufficient evidence to support her attempted murder conviction and argues that the trial court erred in allowing the Commonwealth to admit into evidence a comment that Appellant made on social media.  We affirm.

Appellant was charged with the aforementioned offenses after she attempted to run over Kaitlin Ruby ("the victim") with her car.  The trial court aptly summarized the relevant factual background as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

On June 18, 2013, [the victim] had plans with Erick Adams (hereinafter "Mr. Adams") and their children. [The victim] stated that when they returned to Mr. Adams' house and saw [Appellant] in the driveway, Mr. Adams drove [the victim] to the tanning salon instead. [FN1] [The victim] attempted to call Mr. Adams to pick her up but when he didn't answer, she decided to walk to his residence. As [the victim] was turning on Buckeye Tram Road, she observed Appellant drive past her and then complete a U-turn in the middle of the road. At this point, Randy Gowton (hereinafter "Mr. Gowton") offered [the victim] a ride, and dropped her off in front of Mr. Adams' residence. [The victim] then observed Appellant's vehicle directly behind Mr. Gowton's truck. [The victim] recalls hearing Appellant gas her vehicle, and as [the victim] looked back, she saw Appellant's vehicle, coming towards her, and then striking her. [The victim] remembers being under the vehicle and then lying in the grass while attempting to move. As [the victim] watched Appellant's vehicle turn around, she remembers yelling "please stop, don't do this." At this point, Appellant exited her vehicle, and told [the victim] she was going to take her to the hospital. Appellant attempted to pick up [the victim] and place her in the vehicle. Mr. Gowton returned and stayed with [the victim] until the ambulance arrived. [The victim] was then flown by Life Flight to a hospital where she stayed for approximately one month.

> [FN1] [The victim] stated that she met Appellant on a previous occasion when she went to visit her children at Mr. Adams' residence.

[The victim] described several injuries that she sustained as follows: two deep cuts in both legs, tendon and joint damage in her right leg, either tendon or joint damage in her left leg, pelvic fractures, a hematoma on her head and on her abdominal, a laceration to her right elbow, a laceration on her back, a brush burn on her left ankle, and separation of [the victim's] spinal cord from her pelvis. The injuries required two surgeries. For the entire hospital stay, [the victim] was confined to a bed and was not able to walk. After her hospital discharge, she was transferred to a skilled nursing facility, where she completed physical therapy and occupational therapy. Later on, when [the victim] gave birth to her current husband's child, she was required to have an emergency C-section because her pelvis would not entirely expand. [The victim] stated that she

currently has a lot of pain and side effects from the injuries, and still requires screws in her pelvis to connect her spine.

Mr. Gowton corroborated [the victim's] testimony regarding the incident on June 18, 2013. Mr. Gowton testified that he was driving down Buckeye Tram Road, saw a woman whom he knew to be associated with his neighbor, Mr. Adams, and offered her a ride because it started to rain. The woman, later identified as [the victim], accepted the ride. While Mr. Gowton was driving [the victim] to Mr. Adams' house, he noticed a maroon SUV behind him. When Mr. Gowton approached the residence, he pulled over so the SUV could pass, but instead it stopped. After [the victim] exited the vehicle and as Mr. Gowton was driving away, he looked in his driver side vehicle and observed the vehicle driving through the driveway and striking [the victim]. [FN2] Mr. Gowton then parked his vehicle, saw his neighbor Alex, and ordered him to call 911. When Mr. Gowton approached the area of the incident, he observed Appellant attempting to place [the victim] into her vehicle. Mr. Gowton then pulled [the victim] out of the vehicle, laid her on the ground, and stayed with her until the firemen and ambulance arrived.

> [FN2] Mr. Gowton testified that the center front part of the vehicle struck [the victim].

[Mr. Adams testified that] [e]arlier on the same date, as [he] was returning to his residence on Buckeye Tram Road with [the victim] and their two children, he saw Appellant at his house and continued to drive past his house, and [took the victim] to Sun Kissed Tanning, approximately one-mile from his residence. [FN3] Mr. Adams returned home where Appellant was waiting, and Appellant collected her belongings that were still at the residence. When he left with the children to pick up [the victim], he was not able to find [the victim]. Mr. Adams then returned home within minutes after receiving a call from his neighbor about the incident at his residence. When he returned home, he saw [the victim] lying on the ground and Appellant's vehicle in the yard. [FN4] Emergency personnel arrived shortly thereafter.

> [FN3] Mr. Adams, Appellant's ex-boyfriend and owner of the residence 271 Buckeye [Tram] Road, testified to his previous relationship with Appellant,

which commenced a few months prior to the incident and ended around June 1, 2013. Mr. Adams stated that he told Appellant the he was ending their relationship because he still had feelings for [the victim]…

[FN4] Mr. Adams testified that he had video surveillance outside of his residence and provided a copy of the home surveillance video, which was admitted as Commonwealth's Exhibit 9. The video was played for the jury with a time stamp commencing at 5:43 p.m.

\*\*\*

Casandra Rowe (hereinafter "Ms. Rowe") testified as to her relationship with [the victim] prior to and at the time of the incident. She stated that, around May and June of 2013, [the victim] lived with Ms. Rowe. At that time, [the victim] did not have her own cellular phone. However, Ms. Rowe did, in fact, possess a cellular phone in which [the victim's] Facebook account was added. Ms. Rowe stated that she observed private messages on [the victim's] Facebook account from Appellant. Ms. Rowe admitted the she was the one who responded to the Facebook messages from Appellant, not [the victim]. [FN5] Specifically, Ms. Rowe explained that the initial message was sent from Appellant on June 15th and two days later, Ms. Rowe sent her last text message at approximately 1:00 a.m. on June 18, 2013. Appellant then sent [the victim] a message at 8:35 a.m. on June 18, 2013, the date of the incident, which stated, "[y]ou look like a beatup China rag doll bitch I will 'F' you up I dare you to step to me I F-in dare you bring it." [FN6]

[FN5] [The victim] conceded that she was aware that Ms. Rowe was sending Facebook messages to Appellant but was unaware of the content of those messages.

[FN6] Ms. Rowe also read two messages she sent to Appellant, which stated "[O]nce again u need to check urself nd realize ur position fall back sideline before u find out how quick I can put your 'A' there." "But since u are so bold over the Internet, make sure you have the same walk when I see u cuz I'm not

- 4 -

like ur kind I'll beat ur trashy frail skeleton body in with no second thoughts."

Trial Court Opinion, 12/20/16, at 1-4 (citations and some footnotes omitted).

After the conclusion of the trial, the jury convicted Appellant on all charges. On October 11, 2016, the trial court sentenced Appellant to seven and half to fifteen years' imprisonment on the attempted murder charge. The remaining charges merged with the attempted murder charge for sentencing purposes. Appellant filed a timely appeal and complied with the trial court's directions to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

Appellant raises two issues for our review on appeal:

1. Whether the Court of Common Pleas erred in determining the jury's guilty verdict for Criminal Attempt – Homicide was supported by sufficient evidence.

2. Whether the Court of Common Pleas erred in allowing the Commonwealth to present vulgar and unduly prejudicial evidence regarding [Appellant's] Facebook messages with Casandra Rowe, who pretended to be the victim in this matter, in an attempt to provoke conflict with [Appellant].

Appellant's Brief, at 2 (issues reordered).

First, Appellant challenges the sufficiency of the evidence supporting her conviction for attempted murder. Our standard of review is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the

commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Tukhi*, 149 A.3d 881, 886–87 (Pa.Super. 2016) (citation omitted).

Section 901(a) of the Crimes Code provides that an individual can be convicted of criminal attempt if that person "with intent to commit a specific crime, … does any act which constitutes a substantial step towards the commission of that crime." 18 Pa.C.S. § 901(a). More specifically, with respect to attempted murder, this Court has provided the following:

"For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill." *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa.Super. 2004). Therefore, "[i]f a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder." *In re R.D.,* 44 A.3d 657, 678 (Pa.Super. 2012). "The Commonwealth may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from circumstantial evidence." *Id*. Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of

the body is sufficient to establish the specific intent to kill." ***Commonwealth v. Rega***, 593 Pa. 659, 933 A.2d 997, 1009 (2007); ***see also Commonwealth v. Cousar***, 593 Pa. 204, 928 A.2d 1025, 1034 (2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body").

***Commonwealth v. Tucker***, 143 A.3d 955, 964 (Pa.Super. 2016).

Appellant limits her sufficiency challenge to claim the Commonwealth failed to prove she intended to kill the victim. While Appellant characterizes her behavior as "making contact with the victim," she argues that her attempt to render aid to the victim after running her over with her vehicle demonstrates that she did not have intent to kill. Appellant's Brief at 7. In addition, she claims her attempt to take the victim to the hospital "would have been successful, save for the intervention of Randy Gowton, who removed the victim from the Appellant's vehicle." Appellant's Brief, at 7.

This argument is disingenuous. Appellant did not merely "make contact" with the victim; she mowed the victim down in a forceful collision with her large SUV. The Commonwealth admitted into evidence surveillance video footage, taken from three different angles, that shows how Appellant violently struck the victim with her Ford Explorer and caused the victim's body to become trapped under the vehicle. Yet even after the impact, Appellant continued to drive, dragging the victim's body under her vehicle, seemingly without applying any brake. There is no doubt that Appellant employed her SUV as a deadly weapon on a part of the victim's body, as the victim's entire body was crushed under the weight of the vehicle. Appellant's attempt to take the victim to the hospital by picking her up and

laying her in the driver seat did not show that Appellant lacked intent to kill; it was more indicative of Appellant's consciousness of guilt. Accordingly, we find Appellant's sufficiency challenge to be meritless.

Second, Appellant challenges the trial court's decision to allow the Commonwealth to admit into evidence messages Appellant sent to the victim's Facebook account that were answered by the victim's friend, Cassandra Rowe. In reviewing a challenge to the admission of certain evidence, our standard of review is as follows:

> [q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record....

***Commonwealth v. Richard***, 150 A.3d 504, 512 (Pa.Super. 2016) (citation omitted).

Specifically, Appellant argues that the trial court abused its discretion in admitting the following inflammatory statement she sent to the victim's Facebook account: "You look like a beatup (sic) China rag doll bitch I will fuck you up I dare you step into me I Fuckin dare you to bring it." N.T. Trial, 5/2/16 - 5/4/16, at 127. Appellant argues that the admission of this statement did not have sufficient probative value, was unduly prejudicial to her defense, and was solely a response to Ms. Rowe, who Appellant claims incited the conflict.

Our rules of evidence provide that a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of … unfair prejudice." Pa.R.E. 403. We agree with the trial court's conclusion that this message was highly probative of Appellant's intent, motive, and absence of mistake in causing the accident just hours after she sent these threatening messages. The admission of this statement would refute Appellant's claim that she accidentally ran over the victim.

While Appellant is correct that this statement is prejudicial to the defense, she has not shown that the statements were unduly prejudicial. This Court has emphasized that "evidence will not be prohibited merely because it is harmful to the defendant. This court … is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand." ***Commonwealth v. Page***, 965 A.2d 1212, 1220 (Pa.Super. 2009). ***See Commonwealth v. Foley***, 38 A.3d 882, 891 (Pa.Super. 2012) (exclusion of evidence on grounds that is prejudicial "is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case"). As Appellant has not established that the statement in question was so prejudicial as to cause the jury to decide the case on an improper basis, we find no abuse of discretion in admitting this statement into evidence.

For the foregoing reasons, we affirm the judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/15/2017