J-S69035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY S. MANEVAL | : | |
| | : | |
| Appellant | : | No. 1008 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 27, 2018
In the Court of Common Pleas of Snyder County Criminal Division at
No(s):  CP-55-CR-0000335-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED DECEMBER 07, 2018**

Anthony S. Maneval (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of two counts of indecent assault.[1] Appellant challenges the admission of a surveillance video and the weight of the evidence presented at trial.  We affirm.

Appellant was charged with committing indecent assault at his place of employment, in the "receiving" or stockroom area of a Bon-Ton department store.  N.T. Trial, 10/20/17, at 36.  In addition to indecent assault, Appellant was charged with possessing an instrument of crime (PIC) and harassment.[2] The indecent assault counts included a misdemeanor of the first degree under

---

[1] 18 Pa.C.S.A. § 3126(a)(1), (4).

[2] 18 Pa.C.S.A. §§ 907(a), 2709(a)(3).

18 Pa.C.S.A. § 3126(a)(4), and a misdemeanor of the second degree under 18 Pa.C.S.A. § 3126(a)(1).

The case proceeded to a bench trial on October 20, 2017. Jenelle Longacre, the human resources manager at Bon-Ton, testified that she participated in installing a hidden surveillance camera near Appellant's desk, which was "hooked into" the store's surveillance system. N.T., 10/20/17, at 6. On August 25, 2016, around 8:25 a.m., Ms. Longacre, along with David Nuss, the store's loss prevention officer, reviewed the surveillance video taken earlier that morning. *Id.* at 34, 36, 38. Ms. Longacre described what she observed on the video: shortly after Appellant arrived at work at 6:10 a.m., when no one else was present, he began masturbating. *Id.* at 9. He left the room but returned with a pair of pink shorts and a sandwich, unwrapped the sandwich, "continue[d] to masturbate, pick[ed] up the sandwich and [held] it close to his body, put[ ] the sandwich down, finish[ed] . . . [and] rewrap[ped] the sandwich, and carrie[d] on with his day." *Id.* at 9-10. At approximately 7:00 a.m., another employee, Rebecca Parent, arrived, and she consumed the sandwich. *Id.* at 10. Ms. Parent also testified at trial, stating that she did not know what Appellant had done with the sandwich and would not have wanted him to engage in such conduct. *Id.* at 16.

Ms. Longacre further testified that when questioned about the incident, Appellant stated, "[W]hat you saw I was doing is what I was doing. There's been problems at home." N.T., 10/20/17, at 11. Ms. Longacre stated that

the surveillance video was kept in the custody of Christopher Hoffman[3] for five days until "Christopher Hoffman and our investigation for the Bon-Ton" made a copy and provided it to state police. *Id.* at 12, 38.

State Trooper James Ballantyne testified that he reviewed the surveillance video provided by Bon-Ton, which showed "an overhead bird's eye view" of the area near Appellant's desk. N.T., 10/20/17, at 18-19. The trooper's description of the video corroborated Ms. Longacre's testimony, although Trooper Ballantyne added that "[i]t appeared [Appellant] place[d] his penis directly onto the sandwich while masturbating." *Id.* at 19. On cross-examination, Trooper Ballantyne acknowledged that the view of Appellant's penis and the sandwich was "partially obscured by [Appellant's] head." *Id.* at 46. Trooper Ballantyne testified that **after** Appellant appeared to ejaculate, "he re-secure[d] the sandwich with his hands and rewrap[ped] it up in tinfoil . . . to make it look like it was not opened." *Id.*

Trooper Ballantyne also testified that five days after the incident, Appellant went to the state police barracks and gave a videotaped statement. N.T., 10/20/17, at 20, 42. According to the trooper, Appellant "admitted to all the actions about the masturbation" and stated that he had "pictured Ms. Parent in the shorts and that's why he specifically selected those from the young girl-teen section." *Id.* 20-21. In his statement, however, Appellant

---

[3] Ms. Longacre did not explain, and the record does not specify, Mr. Hoffman's title or his connection to Bon-Ton. *See* N.T., 10/20/17, at 38.

denied ejaculating on the sandwich. *Id.* at 21-22.

Following the above testimony, the Commonwealth sought to play the surveillance video. N.T., 10/20/17, at 23. Appellant objected. He argued that there was no foundation for introducing the video because the person who created it was not available to testify that: (1) the video system was operating properly; and (2) the video was unedited and accurately depicted what occurred. *Id.* at 23, 26. The trial court responded that Pa.R.E. 901 requires evidence to be authenticated, which may be accomplished by producing evidence, including witness testimony, "sufficient to support a finding that the item is what the proponent claims it is." *Id.* at 24 (quoting Pa.R.E. 901(a), (b)(1)). The court noted that in this case, no one (other than Appellant) could testify to being present in the room that morning. *Id.* at 25. The court referenced Ms. Longacre's testimony that she helped install the surveillance camera and viewed the surveillance video, although she did not testify that the video "accurately depict[ed] the scene in the shipping room[.]" *Id.* at 24-25. The Commonwealth re-called Ms. Longacre and played the surveillance video for the purpose of her identifying Appellant and confirming that the video gave "a fair and accurate depiction of the loading area." *Id.* at 26, 28-29. The court then overruled Appellant's objection to the admission of the video. *Id.* at 35. Ms. Longacre and Trooper Ballantyne testified that the video played at trial was the same video — not edited or changed in any way — that they initially viewed. *Id.* at 38, 39.

The Commonwealth also played the video of Appellant's statement to police. N.T., 10/20/17, at 40-41. When Trooper Ballantyne asked Appellant "about Law and Order and black light and is it going to glow [sic]," Appellant admitted "yeah, my hands would have been glowing when I touched that sandwich." *See id.* at 51.

Following the conclusion of the Commonwealth's evidence, Appellant moved to dismiss all charges on the basis that the Commonwealth failed "to introduce sufficient evidence." N.T., 10/20/17, at 49-50. He argued that there was no evidence of touching or indecent contact, or evidence establishing "the *mens rea* element [of the victim] coming into contact with seminal fluid." *Id.* at 50.[4] The Commonwealth responded that it could

---

[4] Appellant was charged and convicted under the following subsections of the indecent assault statute:

**(a) Offense defined.—**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent; [or]

\* \* \*

(4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring[.]

- 5 -

establish indecent assault by showing that a defendant intentionally caused the complainant to come into contact with his seminal fluid for the purpose of arousing sexual desire. *Id.* at 50-51. The Commonwealth argued that the evidence established Appellant intended to ejaculate or put his bodily fluids on the sandwich for his sexual gratification, and regardless of whether Appellant's penis touched the sandwich, Appellant admitted to Trooper Ballantyne that his hands had seminal fluid on them when he handled the sandwich. *Id.* at 51-52. The trial court granted Appellant's motion to dismiss the counts of PIC and harassment, but denied his motion to dismiss the two counts of indecent assault. *Id.* at 53.

Appellant declined to testify or present any evidence. The trial court found him guilty of both counts of indecent assault. N.T., 10/20/17, at 65. On February 27, 2018, the court sentenced Appellant to 90 days to 12 months of imprisonment, followed by 4 years of probation. Appellant did not file a post-sentence motion, but took a timely appeal. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement.

Appellant presents two issues for our review:

> I. Did the Trial Court abuse its discretion by permitting the Commonwealth to play, taking narrative testimony regarding, and subsequently admitting into evidence video recordings that were not properly authenticated pursuant to Pa.R.Crim.P. 901 and over the continuing objection by Appellant?

---

18 Pa.C.S.A. § 3126(a)(1), (4).

II. Did the trial court abuse its discretion in holding Appellant guilty of indecent assault when the verdict was not supported by the weight of the evidence before the Court at trial?

Appellant's Brief at 4-6.

In his first issue, Appellant argues that the trial court abused its discretion in admitting the Bon-Ton surveillance video, as well as "narrative testimony regarding" the video, because the video was not properly authenticated pursuant to Pa.R.E. 901. *Id.* at 13. Appellant maintains that the Commonwealth failed to authenticate the video by: (1) presenting a witness who observed the recorded event and testified that the recording is a fair and accurate record; or (2) presenting a witness who testified that the recording process produced an accurate representation of the event and that the recording has not been altered. Appellant analogizes the facts in this case to those in ***Kopytin v. Aschinger***, 947 A.2d 739 (Pa. Super. 2008), which held that a surveillance video should not have been entered into evidence where the "employees who made the recording had not testified" and the witness who did testify was not present at the taping and thus could not say whether the tape was "a fair and accurate depiction of [the defendant] at that time." Appellant's Brief at 16-17.

This Court has stated:

[O]ur standard of review in assessing the trial court's evidentiary rulings is extremely narrow. Such decisions are referred to the court's discretion, and will not be disturbed absent both error and harm or prejudice to the complaining party. When legal issues such as the interpretation of a rule are concerned, "our standard of review is *de novo* and our scope of review is plenary."

***Kopytin***, 947 A.2d at 744 (citations omitted).

> [D]emonstrative evidence . . . is "tendered for the purpose of rendering other evidence more comprehensible to the trier of fact." As in the admission of any other evidence, a trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect. The offering party must authenticate such evidence. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Demonstrative evidence may be authenticated by testimony from a witness who has knowledge "that a matter is what it is claimed to be." Pa.R.E. 901(b)(1). Demonstrative evidence such as . . . motion pictures . . . have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict.

***Commonwealth v. Serge***, 896 A.2d 1170, 1177 (Pa. 2006) (some citations omitted).

As stated above, the trial court reasoned that in this case, no one observed Appellant's conduct as it occurred and thus the Commonwealth could not present a witness who could testify that the surveillance video accurately depicted the incident. N.T., 10/20/17, at 25; ***see also*** Commonwealth's Brief at 2 ("[T]he Commonwealth could not produce a witness with knowledge of the facts depicted in the video per Pa.R.E. 901(b)(1) . . . ."). Nonetheless, the trial court accepted Ms. Longacre's testimony that she participated in installing the surveillance camera and reviewed the particular video approximately 2 hours and 15 minutes after it recorded Appellant; that Appellant was the person in the video; that the video accurately depicted the area surrounding Appellant's desk; and that the video was kept in the custody

of the store's investigation team for five days before it was provided to the state police. *See* N.T., 10/20/17, at 28-29, 34, 36. Ms. Longacre testified that the surveillance video played at trial was not edited from what she reviewed at the store, and Trooper Ballantyne likewise testified that the video shown at trial was the same as what he received from the store. *Id.* at 38, 39.

We agree with the trial court's determination that the facts of *Kopytin* are distinguishable from the fact of this case. *See* N.T., 10/20/17, at 32-33. In *Kopytin*, the plaintiff sought damages for injuries sustained in a car accident. *Kopytin*, 947 A.2d at 741-742. At trial, the defendant presented a video taken by "two former employees" of a private investigative agency, which showed the plaintiff in the community carrying heavy groceries. *Id.* at 742, 747. At trial, only the principal of the investigative agency testified about the video, and he stated that "his knowledge of the circumstances surrounding the surveillance of [the defendant's] activities was derived from the handwritten notes submitted with the tape by the two employees who actually shot the film." *Id.* at 747. This Court held that the principal's testimony was insufficient to authenticate the video under Pa.R.E. 901, "as it provide[d] no demonstration of knowledge that 'a matter is what it is claimed to be.'" *Id.* Conversely, in the instant case, the surveillance video was taken from a stationary camera inside a store, and Ms. Longacre testified that she helped install the camera, knew where it was located, regularly reviewed the

surveillance videos, viewed the particular video, and identified Appellant and the area around his desk. N.T., 10/20/17, at 28-29, 33. Ms. Longacre had firsthand knowledge about the surveillance camera, its location, and Appellant's identity and work area; she did not, like the witness in **Kopytin**, rely on information from anyone else to testify. We thus discern no abuse of discretion in the trial court's determination that the Commonwealth properly authenticated the surveillance video pursuant to Pa.R.E. 901. **See Kopytin**, 947 A.2d at 744.

Further, Appellant has not claimed any prejudice by the admission of the video, and the video was cumulative of other evidence presented by the Commonwealth. **See** N.T., 10/20/17, at 9-10 (testimony of Ms. Longacre about Appellant's conduct), 18-20 (testimony of Trooper Ballantyne about Appellant's conduct), 22-23 (Commonwealth's request to play surveillance video). It is undisputed that Appellant did not deny his behavior, **see id.** at 11 ("[W]hat you saw I was doing is what I was doing."). Appellant admitted to police that he masturbated with the pink shorts and the sandwich and he had seminal fluid on his hand when he rewrapped the sandwich that would later be eaten by Ms. Parent. **Id.** at 23, 51-52. Accordingly, we do not disturb the trial court's admission of the store's surveillance video. **See Kopytin**, 947 A.2d at 744; **Serge**, 896 A.2d at 1177.

In Appellant's second issue, he claims that the verdict was against the weight of the evidence. Specifically, Appellant contends that the weight of the

evidence did not support the trial court's findings that Ms. Parent came into contact with seminal fluid and that it was Appellant's intention that she do so. Appellant maintains that Trooper Ballantyne's testimony about whether Appellant's penis touched the sandwich was inconsistent; Appellant denied to police that he ejaculated onto the sandwich; the Commonwealth's evidence consisted merely of the "contested" store surveillance video and Trooper Ballantyne's testimony about, and video recording of, his interview with Appellant; and neither the sandwich nor its wrapper was available for examination. *Id.* at 23-24. Upon review, we find that Appellant has waived his weight issue. This Court has explained:

> [A] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, "but questions which evidence is to be believed."

*Commonwealth v. Richard*, 150 A.3d 504, 516 (Pa. Super. 2016). "It is . . . well-settled that a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance either in a post-sentence motion, by written motion before sentencing, or orally prior to sentencing. *See* Pa.R.Crim.P. 607(A)[.]" *Id.* (one citation omitted).

At trial, Appellant moved to dismiss the charges on the basis that the Commonwealth failed to present **sufficient** evidence. N.T., 10/20/17, at 49-50. Our review of the trial transcript reveals that Appellant never challenged the **weight** of the evidence. Additionally, Appellant did not file any post-trial

motion. *See* Pa.R.Crim.P. 607(A). As he presents the weight issue for the first time on appeal, it is waived. *See Richard*, 150 A.3d at 516.

Moreover, even if Appellant had preserved and presented his weight claim to the trial court, we would find it meritless. The trial court accepted the Commonwealth's evidence, including Appellant's statement to Trooper Ballantyne that Appellant's hand would have glowed under a black light due to the presence of seminal fluid when he handled the sandwich. *See* N.T., 10/20/17, at 9, 19, 51-52. The trial court's verdict would not shock one's sense of justice. *See Richard*, 150 A.3d at 517. For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2018

- 12 -