J-S03029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :         PENNSYLVANIA
                                 :
             v.                      :
                                 :
                                 :
EDGAR LEE WILLIAMS           :
                                 :
           Appellant           :    No. 456 WDA 2024

Appeal from the Judgment of Sentence Entered December 18, 2023
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001200-2021

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:                  **FILED: JULY 9, 2025**

Edgar Lee Williams ("Williams") appeals from the judgment of sentence imposed following his convictions for, *inter alia*, involuntary deviate sexual intercourse ("IDSI") and person not to possess a firearm.[1] We affirm.

We summarize the factual and procedural history of this case, from the certified record and trial court opinion, as follows. In the summer of 2020, then-ten-year-old D.B. and her family met Williams and his romantic partner Amanda Engler ("Engler"). D.B.'s family, along with other neighborhood families, frequently socialized with Williams and Engler. Several neighborhood girls began associating with Williams, including D.B., who would go to Williams's house, sometimes with friends, and sometimes alone, usually when Engler was at work. D.B. and Williams swam together at a neighbor's pool,

---

[1] *See* 18 Pa.C.S.A. §§ 3123(b), 6105(a)(1).

played with his animals, and played videogames. D.B.'s mother trusted Williams with D.B., and D.B. spent the night at Williams's house when D.B.'s mother and Engler were out of town.

At some point in the summer of 2020, Williams made an unspecified remark to D.B. that made her feel "icky" while they were playing Xbox together in the living room at Williams's home. *See* N.T., 8/8/23, at 127. On another occasion, later that summer, while the two were in Williams's bedroom watching a movie, Williams licked D.B.'s vagina and touched it with his hand. *See id*. at 128-33. It ended when D.B. left the room and house. Williams told her she could not tell anyone about the incident. D.B., believing she would get in trouble, did not disclose the incident immediately, but rather tried to keep her distance from Williams. However, she saw him again at a neighbor's pool, and she also continued to play videogames with him. After Williams again tried to initiate sexual contact with her, D.B. disclosed the prior incident to her mother.

More specifically: after Williams's second attempt to touch her, D.B. took a small portion of her parents' rent money and used it to buy things at school for herself and her friends, and after the theft was discovered, D.B.'s parents grounded her and took her phone away. She figured she "might as well" get the incident with Williams "off her chest," so she disclosed the abuse to her mother, knowing that "telling the secret wouldn't get me out of . . . trouble from stealing the money." *Id*. at 156.

Following D.B.'s disclosure, her stepfather, J.D., confronted Williams, who did not expressly deny the allegation, but stated his surprise that D.B.'s parents would believe it, and asked whether he should expect the police. D.B.'s mother reported the incident to the Lower Burrell Police Department the same evening as the disclosure.

Karen Morris, M.D. ("Dr. Morris") examined D.B. and found no evidence of abuse; however, based on the nature of the alleged abuse, Dr. Morris would not have expected to find any such evidence. Thus, the absence of the evidence neither confirmed nor undermined D.B.'s assertions of abuse.

D.B. also completed a forensic interview with Keven Rua, Ph.D. ("Dr. Rua") in which she described Williams's room as containing a television, fish tank, and "lots of guns." Trial Ct. Op., 6/4/24, at 7 (citing N.T., 8/9/23, at 215-18, Commonwealth's Ex. 23 (admission of video of forensic interview of D.B. by Dr. Rua which was played for the jury)).

Detective Brandon Nedley ("Detective Nedley") and Detective Sergeant Zachary Beam ("Sergeant Beam") of the Lower Burrell Police Department interviewed Williams, during which Williams confirmed that he and D.B. regularly spent time together, during which time they played video games, watched movies, and engaged in other activities. He gave a negative opinion of how D.B.'s parents treated her, relating to their disciplinary style and inattentiveness. He stated that D.B. was never allowed in his room because

he kept a crossbow therein. Williams could not explain why D.B. would make allegations against him.

Officers executed a search warrant on Williams's residence following D.B.'s disclosure, during which they observed firearms in plain view, specifically, two handguns in the master bedroom, one on each nightstand on either side of the bed, and an assault rifle between Williams's nightstand and the bed. Williams was statutorily ineligible to possess a firearm, based on prior criminal convictions, which the officers were aware of; accordingly, they applied for a second search warrant to look for additional weapons, and found a combat vest on Williams's side of the bed, with several handgun- and rifle-magazines in it. Officers also found a pistol on or in Engler's nightstand. None of the weapons were registered to, or purchased by, Williams. At the time, Williams admitted to an officer that he had "shot those guns." N.T., 8/9/23, at 278. J.D., D.B.'s stepfather, had previously gone shooting with Williams, during which J.D. and Williams fired an AR-15 rifle and a handgun, both of which J.D. knew Williams had kept in his bedroom.

Williams was arrested and charged with several offenses at two dockets. At No. 1200 CR 2021 ("the abuse case"), he was charged with IDSI, as noted above, and additionally with corruption of minors, unlawful contact with a

minor, and indecent assault.[2]  At No. 1202 CR 2021 ("the guns case"), Williams was charged with four counts of person not to possess.

The Commonwealth filed a notice of consolidation of the cases in May 2021, and Williams elected a jury trial, which occurred in August 2023.

Just before jury selection, defense counsel made an oral motion to sever, styled as an objection to the joinder of the cases.  Williams asserted the cases did not arise from the same fact pattern, transaction, or occurrence. *See* N.T., 8/7/23, at 2-3.  Williams also asserted prejudice because, "if these cases are tried together, the jury is going to be hearing incriminating evidence in the gun[s] case, and I'm concerned that they will be prejudiced upon hearing [Williams] has been convicted of enumerated offenses." *Id*. at 4-5.

The trial court concluded the cases involved related facts, given that D.B. described lots of firearms in Williams's bedroom; the court also determined the jury could separate the two cases; and that, in any event, Williams's motion to sever, was untimely. *See id*. at 5.  Additionally, to cure the prejudice Williams asserted, he and the Commonwealth agreed to a stipulation that he was a person not to possess, but the grounds for his ineligibility were not disclosed to the jury. *See id*. at 7-8 (discussion of stipulation); *see also* N.T., 8/9/23, at 210 (stipulation read to the jury).

---

[2] *See* 18 Pa.C.S.A. §§ 6301(a)(1)(ii), 6318(a)(1), 3126(a)(7).

During the trial, Williams offered testimony by Engler that the guns were hers, and not his. Williams additionally testified in his own defense, denied D.B.'s allegations of sexual abuse, and also denied that he owned or used or was even present when the guns were in the residence. Williams also offered testimony by the owner of the neighborhood pool, Loren Malletto ("Malletto") that the pool was closed on September 17, 2020, meaning it would have been closed on September 25, 2020, which was a day when D.B. had a half day at school, and which, Williams asserted, was the day on which the abuse, if it occurred, would have had to occur.

At the conclusion of the trial, the jury found Williams guilty of all charges, and the trial court sentenced him to, *inter alia*, an aggregate of seventeen to forty years of imprisonment for IDSI with concurrent terms of incarceration for the other convictions. Additionally, the trial court held a sexually violent predator ("SVP") hearing, after which it found Williams was an SVP. Williams filed a post-sentence motion challenging the weight of the evidence, which the trial court denied. Williams then timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Williams raises the following issues for our review:

I.  Did the trial court err in denying [Williams's] motion to sever?

II. Did the trial court err in denying [Williams's] post-sentence motions?

    a. Did the jury give enough weight to the testimony that the firearms found in the search were not owned by [Williams], such that no reasonable jury could find [Williams] guilty?

- 6 -

> b. Did the jury give enough weight to the inconsistencies and impossibilities in the timeline testified to by the alleged victim, such that no reasonable jury could find [Williams] guilty?

Williams's Br. at 2-3.

In his first issue, Williams argues the trial court erred in denying his motion to sever. Our standard of review for severance claims is as follows:

> A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.

***Commonwealth v. Dozzo***, 991 A.2d 898, 901 (Pa. Super. 2010) (internal citation and brackets omitted).

Pennsylvania Rule of Criminal Procedure 582 provides that cases may be joined if "(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or (b) the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1). Rule 583, which governs severance, provides: "The court may order separate trials of offenses . . . if it appears that any party may be prejudiced by offenses . . . being tried together." Pa.R.Crim.P. 583. For purposes of Rule 583, "the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." ***Commonwealth v. Richard***, 150 A.3d 504, 509 (Pa. Super. 2016). That is:

> The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id*. at 510 (internal citation omitted).[3]

The comment to Rule 583 notes that "Under Rule 578 (Omnibus Pretrial Motion for Relief), any request for severance must ordinarily be made in the omnibus pretrial motion or it is considered waived unless a later filing is permitted [per] Rule 579." Pa.R.Crim.P. 583 cmt. Rule 579 requires omnibus pretrial motions to be filed within the thirty days following arraignment "unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown." Pa.R.Crim.P. 579(A).

_____

[3] Additionally, when a defendant moves to sever offenses not based on the same act or transaction, the court must determine: "(1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses." **Richard**, 150 A.3d at 510 (internal citation omitted). Where evidence of a crime, wrong, or other act is inadmissible to prove a person's character, **see** Pa.R.E. 404(b)(1), evidence of "prior bad acts" may be admissible under the *res gestae* exception, that is, where the evidence has become "part of the history of the case and formed part of the natural development of facts." **Richard**, 150 A.3d at 512.

Williams argues the trial court erred in denying his motion to sever because: (1) the charges in this case were not based out of the same transaction or occurrence; (2) evidence of each offense would not have been admissible at a trial for the other offense; and (3) he suffered prejudice because the nature of the allegations against him, namely, sex offenses against a minor, had a "high risk of inflaming the minds of the jurors" in the firearms case. *See* Williams's Br. at 11, 13, 15-17. Specifically, Williams maintains that abuse allegations pertained to the fall of 2020, while the search warrant uncovering the firearms was executed in February 2021, and the first search warrant was to corroborate D.B.'s description of his room, rather than to search for firearms; and that it was only after officers executed the search warrant that they saw firearms and applied for a second search warrant. *See id*. at 12. Williams concedes some of the evidence from the abuse case would have been admissible in the guns case, namely, D.B.'s testimony about observing guns in his room, but he claims that the evidence of the sexual abuse would have been inadmissible in the guns case. Similarly, Williams also acknowledges evidence of D.B.'s observation of the firearms would have been admissible in the abuse case, but he argues the evidence he was not a person to possess, and the additional evidence about the firearms establishing constructive possession, would have been inadmissible. *See id*. at 13-14.

The trial court considered Williams's arguments and concluded they merit no relief:

This issue was not raised in an omnibus pretrial motion and is therefore waived. Even if this issue had not been waived, this argument does not have merit as the limited stipulation agreed to by both parties did not reveal that [Williams] had a prior conviction but only that he was disqualified from possessing, using, or controlling a firearm as of April of 2006. This evidence does not solely show [Williams's] propensity to commit a crime, and the jury was unaware as to the reason for disqualification. Additionally, th[e c]ourt concluded that the jury was capable of separating both cases from one another. At the time of [Williams's] arrest on the sexual assault case, the guns were discovered[,] and [Williams] was charged with the firearms offenses. Thus, the firearm case is connected by way of how the offense came to light.

Th[e c]ourt submits that the cases met the standard for joinder as D.B.'s statement about [Williams's] bedroom containing "lots of guns" was admissible for both cases. This description was the basis for the first search warrant. Upon execution of the warrant, law enforcement discovered firearms in plain view. The cases also shared many of the same witnesses. Finally, th[e c]ourt concluded that the jury was capable of separating the two cases from one another. Th[e c]ourt submits that the cases were properly joined together for purposes of trial.

Trial Ct. Op., 6/4/24, at 12.

Following our review, we conclude this issue is waived. As the comment to Rule 578 notes, a motion for severance must be presented in an omnibus pretrial motion, which is required to be filed within thirty days of arraignment, unless the defendant was unaware of the grounds for severance, or the trial court has extended the time for filing for cause shown. We note that the trial court did not extend the time for filing an omnibus pretrial motion; accordingly, we examine whether Williams has asserted that counsel was unaware of the grounds for severance. *See* Pa.R.Crim.P. 579(A).

- 10 -

Williams argues that he had four different public defenders and that "it is clear that the opportunity did not exist for them to review the case and seek merit in a severance motion," which required defense counsel to raise the issue orally just before trial. ***See*** Williams's Br. at 18. However, this assertion is unpersuasive. Initially, we note there is no evidence of record that the change in attorneys contributed to the untimeliness of the oral motion to sever. ***See*** N.T., 8/7/23, at 2-8 (untimely oral motion to sever cases with no reason given for the late motion). Additionally, we observe that the notice of consolidation was filed in May 2021, and defense counsel entered his appearance on December 14, 2022. ***See*** Notice of Appearance, 12/4/22. Trial occurred in August 2023, nearly eight months after defense counsel entered his appearance, which belies Williams's assertion on appeal that the various changes in counsel earlier in his case deprived defense counsel of the opportunity to file an omnibus pretrial motion raising this issue. Accordingly, Williams's untimely oral motion to sever was waived. ***See*** Pa.R.Crim.P. 583 cmt.; Pa.R.Crim.P. 579; ***accord Commonwealth v. Chase***, 431 A.2d 224, 225 (Pa. 1981) (holding a motion to sever made five days prior to trial was untimely and hence waived).[4]

---

[4] Additionally, Williams's issue fails because he has not established prejudice. As noted above, Williams stipulated that he was a person not to possess a firearm, and no details about his disqualification were presented to the jury. ***See*** N.T., 8/9/23, at 210. Williams additionally concedes that D.B. would have properly been able to testify in the abuse case about the guns she observed

*(Footnote Continued Next Page)*

In his second issue, Williams argues his convictions were against the weight of the evidence. This Court's standard of review is as follows:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court[.]
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

_____

in Williams's bedroom, **see** Williams's Br. at 13; accordingly, the stipulation cured any potential prejudice arising from the jury hearing in the abuse case evidence that Williams was a person not to possess. **See Commonwealth v. Holt**, 273 A.3d 514, 541-42 (Pa. 2022) (holding that the trial court did not abuse its discretion in denying a motion to sever a person not to possess case from a murder case because the defendant failed to show prejudice, since his "unlawful possession of a firearm was admissible at the murder trial, and because no evidence was admitted regarding [the defendant's] prior offenses that led to his disqualification from possessing a firearm . . ."). Moreover, the trial court properly concluded that evidence that D.B. was in Williams's bedroom with him during which time she observed guns was relevant to prove Williams's constructive possession of the guns, her interactions with Williams were part of the _res gestae_, and there is no showing that the jury was incapable of distinguishing between the two cases. **Cf**. **Commonwealth v. Page**, 59 A.3d 1118, 1132 (Pa. Super. 2013) (affirming denial of a motion to sever a homicide case from a sexual abuse case). **Accord Richard**, 150 A.3d at 509 (prejudice from denial of a severance motion requires a showing that the jury would convict based on propensity or the jury would be incapable of separating the evidence).

*Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) (internal citation and indentation omitted). "Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [fact finder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (internal citation and quotations omitted).

It is the exclusive province of the jury to weigh inconsistencies in a witness's testimony and to make credibility determinations. *See Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017). Indeed, this Court has explained that a new trial should not be granted because of a mere conflict in the testimony, or because a judge on the same facts would have arrived at a different conclusion. *See Juray*, 275 A.3d at 1047. Rather,

> [a] trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id*.

In sexual assault cases, if a jury credits a victim's testimony, then a lack of corroborating physical evidence does not undermine that testimony, because the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, notwithstanding

- 13 -

contrary evidence presented by the defense. *See Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016).

Williams argues his convictions in the abuse case were against the weight of the evidence because the jury apparently "did not consider the inconsistencies in the timeline, which showed the impossibility of an incident on September 25 and extent of the alleged abuse by [Williams]." Williams's Br. at 19; *see also id*. at 21-22. Williams additionally argues that the jury "did not give enough consideration to the fact that . . . the firearms in the home were owned and purchased by Ms. Engler when they found [] Williams guilty of the firearms charge." *Id*. at 21.

The trial court concluded Williams's convictions were not against the weight of the evidence:

> In [the abuse case,] reviewing the evidence presented, th[e c]ourt agrees that there were inconsistencies in the testimony at trial, including inconsistencies between D.B.'s testimony compared to defense witnesses. However, all of the issues raised by [Williams] go to issues of credibility that are for the jury to resolve, and none of the inconsistencies were shocking to one's sense of justice. Even with inconsistencies, the jury is free to believe all, part, or none of the evidence[.]
>
> Defense counsel cross-examined D.B. and had the opportunity to highlight any inconsistencies in front of the jury. The jury had the opportunity to observe all witnesses while they testified at trial, including D.B. and defense witnesses. Additionally, th[e c]ourt specifically instructed the jury about resolving inconsistencies in testimony and determining the credibility of witnesses as part of its standard instructions. Th[e c]ourt also instructed the jury that the testimony of D.B., standing alone, is sufficient proof upon which to find [Williams] guilty in this case.

The Commonwealth did not provide a specific date as to when the crimes took place. Rather, the Commonwealth alleged that the crimes took place from the [s]ummer of 2020 through the [f]all of 2020. Therefore, th[e c]ourt [did] not find that inconsistencies as to the specific date of September 25 are dispositive of the verdict being against the weight of the evidence.

Taken together, th[e c]ourt submits that [Williams's] contentions are without merit and do not shock one's sense of justice. A jury could have reasonably reached their conclusions based on the testimony and evidence presented. . ..

* * * *

[Regarding the guns case, t]he [c]ourt finds that [Williams's] contentions go to credibility and are for the jury to resolve. The jury is free to believe all, part, or none of the testimony. The jury had the opportunity to observe live testimony and make credibility determinations. Defense counsel highlighted [Williams's] claims during trial.

The parties stipulated that [Williams] was a person not to possess firearms. Th[e c]ourt also instructed the jury as to constructive possession of firearms, which can exist, even if [Williams was] not holding them, touching them, or in the same area as the firearms. Rather, the Commonwealth must prove beyond a reasonable doubt that the individual had both intent and power to control the firearms. Therefore, it is not dispositive that Engler bought and owned the weapons. The Commonwealth presented evidence that [Williams] had intent and power to control the firearms, as well as shot some of the firearms, even if the testimony of [Williams] and Engler refuted that.

Therefore, th[e c]ourt submits that the jury's findings were reasonable and not against the weight of the evidence.

Trial Ct. Op., 6/4/24, at 15-17.

Following our review, we conclude Williams has failed to show the trial court abused its discretion in determining his convictions were against the weight of the evidence.

- 15 -

Williams contends that the convictions in the abuse case were against the weight of the evidence, and the trial court accordingly abused its discretion in denying his motion for a new trial, because he offered evidence showing that the abuse could not have happened on September 25, a day on which D.B. had a half-day of school, yet the pool was closed, according to the pool's owner, and apparently in contradiction to D.B.'s testimony. However, our review of the record confirms the trial court's, and Commonwealth's assertion, that D.B. did not testify that the abuse happened on September 25, in particular, and Williams has shown no evidence of record that the abuse must have occurred, but did not actually occur, on that date. Rather, D.B. testified that Williams licked her vagina, and touched her, in his bedroom in the summer prior to school starting back up again, and that, at some point after, she saw him at the neighborhood pool. ***See*** N.T., 8/8/23, at 133; ***see also id***. at 149 (D.B. testifying she believed the abuse occurred "close to the beginning of school"). Assuming *arguendo* a conflict in the testimony about the specific day on which the abuse occurred, it was within the jury's province to weigh and resolve the contradictions. ***See***, ***e.g.***, ***Izurieta***, 171 A.3d at 809; ***Juray***, 275 A.3d at 1047.

Williams also asserts the trial court abused its discretion in finding his convictions in the guns case were not against the weight of the evidence because of Engler's testimony that she owned and purchased the firearms. However, the jury apparently did not credit Engler's testimony, but instead,

believed the following evidence of Williams's constructive possession: the testimony by D.B.'s stepfather, J.D., that he had gone shooting with Williams using a rifle and pistol Williams had kept in his bedroom, *see* N.T., 8/8/23, at 179-80; Williams's admission to an officer that he had fired two of the handguns in his bedroom, *see* N.T., 8/9/23, at 275; the presence of firearms in his bedroom, including one on his nightstand next to his bed, and the rifle was situated between his side of the bed and his nightstand, *see id*. at 230, 232-33; and his possession of a shooting range permit for 2020, *see id*. at 233. Accordingly, Williams's assertion—that the trial court abused its discretion in concluding in the guns case that his convictions were not against the weight of the evidence—is meritless. *See Izurieta*, 171 A.3d at 809 (the jury's role is to assess credibility); *Sanchez*, 36 A.3d at 39 ("Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [fact-finder's] verdict is so contrary to the evidence as to shock one's sense of justice . . ..").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/9/2025