J-S15014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIK RAMONE SURRATT | : | |
| | : | |
| Appellant | : | No. 1260 WDA 2024 |

Appeal from the PCRA Order Entered August 26, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005355-2005

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIK RAMONE SURRATT | : | |
| | : | |
| Appellant | : | No. 1377 WDA 2024 |

Appeal from the PCRA Order Entered August 26, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005495-2005

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                **FILED: July 15, 2025**

Appellant, Erik Ramone Surratt, appeals *pro se* from the August 26, 2024 order that dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.  Upon careful review, we vacate the order and, for reasons set forth *infra*, we vacate Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

judgment of sentence and remand this matter solely to permit the trial court

to re-calculate the time credit to which Appellant may be entitled for all periods

spent in pre-trial custody because of conduct on which the charges in these

cases are based.

The PCRA court summarized the relevant facts and procedural history

of this matter as follows.

> On February 8, 2008, [Appellant], was [found guilty] of two
> counts of first-degree murder as well as burglary, criminal
> attempt and criminal conspiracy after a non-jury trial before the
> Honorable Lester G. Nauhaus. Judge Nauhaus imposed two life
> sentences at the first-degree murder conviction[,] followed by
> a consecutive aggravated sentence of not less than 25 years
> nor more than 50 years at the remaining counts of conviction.
> T[his Court] affirmed [Appellant's] convictions [on April 14,
> 2010,] and [on November 15, 2010], the Pennsylvania
> Supreme Court denied [Appellant's] petition for allowance of
> appeal. [*See Commonwealth v. Surratt*, 998 A.2d 1009
> (Table) (Pa. Super. 2010); *see also Commonwealth v.
> Surratt*, 12 A.3d 752 (Table) (Pa. 2010) (denying allocatur)].
> Thereafter, Appellant] filed his first *pro se* PCRA petition on
> January 12, 2011. After a counseled amended PCRA petition
> was denied, both th[is Court] and [the] Pennsylvania Supreme
> Court denied [collateral] relief. [*See Commonwealth v.
> Surratt*, 2013 WL 11248834, at *1 (Pa. Super. 2013)
> (non-precedential decision); *see also Commonwealth v.
> Surratt*, 92 A.3d 811 (Table) (Pa. 2014) (denying allocatur)].
>
> On March 10, 2016[, however, Appellant] filed a second *pro se*
> PCRA petition seeking resentencing pursuant to *Miller v.
> Alabama*, 567 U.S. 460 (2012). The parties agreed that
> [Appellant] should be resentenced and[, on January 10, 2018,
> Appellant] was resentenced by Judge Nauhaus to [two]
> concurrent terms of imprisonment of not less than 40 years nor
> more than life [for his] first-degree murder conviction[s].
> [Appellant] was [also] sentenced to a concurrent sentence of
> not less than [seven and one-half] years nor more than 15
> years at the criminal conspiracy conviction. [The sentencing
> order affixed the effective date of Appellant's sentence as April

18, 2008 and, as such, Appellant was awarded 3,555 days of time-credit on this basis.] This Court affirmed Appellant's judgment of sentence on July 26, 2019. *See Commonwealth v. Surratt*, 220 A.3d 685 (Pa. Super. 2019) [(non-precedential decision)]. Our Supreme Court then denied Appellant's petition for allowance of appeal on May 7, 2022. [*See Commonwealth v. Surratt*, 278 A.3d 850 (Pa. 2022)].

[Acting *pro se*, Appellant filed the instant PCRA petition on May 13, 2023, raising several challenges to the sentence imposed on January 10, 2018]. … Th[e PCRA c]ourt appointed counsel [who,] on April 30, 2023, [] filed a *Turney*/*Finley*[1] no-merit letter advising the [c]ourt that she had undertaken a thorough review of [the] record and she believed [that] the PCRA petition [lacked] merit. [On June 27, 2024], the PCRA c]ourt issued a notice of intent to dismiss [Appellant's] PCRA petition [pursuant to Pa.R.Crim.P. 907] and [Appellant] filed a response thereto. [The PCRA court dismissed Appellant's petition on August 26, 2024. This timely appeal followed.[2]]

_____

[1] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *see also Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

[2] The PCRA court dismissed Appellant's PCRA petition on August 26, 2024 and, as such, Appellant was required to file his notice of appeal on or before September 25, 2024. *See* Pa.R.A.P. 903(a) (explaining that an appellant has "30 days after the entry of the order from which the appeal is taken" to file an appeal). The docket reflects that Appellant filed his *pro se* notice of appeal on October 17, 2024; however, there are no entries on the trial court's docket which confirm the fact and manner of service of the court's August 26, 2024 order upon Appellant in his *pro se* status (as court-appointed counsel was granted leave to withdraw as Appellant's counsel on June 27, 2024). *See* Pa.R.Crim.P. 114(C)(2)(c) (docket entries shall contain the date of service of a court order). In view of the circumstances, we shall treat this appeal as timely filed. *See Commonwealth v. Midgley*, 289 A.3d 1111, 1117 (Pa. Super. 2023) ("Where the trial court docket in a criminal case does not indicate service on a party or the date of service, we will not quash the appeal or require further proceedings. Rather, we will treat the time in which to take an appeal as never having started to run and treat the appeal as timely.").

- 3 -

PCRA Court Opinion, 12/16/24, 1-2 (unnecessary capitalization and footnote omitted) (paragraph breaks and footnotes added).

Appellant raises the following issues for our consideration.[3]

1. Did [the] PCRA court err when it dismissed Appellant's claim of newly discovered evidence that [the] Commonwealth engaged in selective prosecution to secure longer minimum sentences for Black juvenile lifers?

2. Did [the] PCRA court err when it dismissed Appellant's claim of newly discovered evidence that [the] Commonwealth committed fraud on the court to procure his 40[-]year minimum sentence?

3. Did [the] PCRA court err when it dismissed Appellant's [claim for] time-credit[?]

4. Did [the] PCRA court err when it[:] granted [PCRA counsel's] motion to withdraw as counsel/no-merit letter and failed to provide Appellant new counsel for [the] PCRA proceeding[s], [failed to] appoint appeal counsel[, or failed to] conduct an on-the-record colloquy?

Appellant's Brief at 6 (unnecessary capitalization omitted).

In addressing Appellant's claims, we are mindful of our well-settled standard and scope of review of a PCRA court's dismissal of a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."

___

[3] We have reorganized the issues Appellant raises on appeal for ease of discussion and disposition.

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), appeal denied, 101 A.3d 785 (Pa. 2014).

In his first issue, Appellant argues that the PCRA court erred in dismissing Appellant's claim that the "Commonwealth . . . engaged in selective prosecution to procure longer sentences for Black juveniles convicted for first or second-degree murder than white ones." Appellant's Brief at 24. A review of the certified record, however, reveals that Appellant did not include this issue in his Rule 1925(b) concise statement. *See* Appellant's Rule 1925(b) Statement, 9/27/24, at *3. Appellant, therefore, failed to preserve this issue and we are precluded from reviewing the merits thereof. *See* Pa.R.A.P.1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) s]tatement and/or not raised in accordance with the provisions of [Rule 1925(b)(4)] are waived"); *see also Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that any appellate issues not raised in a compliant Rule 1925(b) statement will be deemed waived).

In his second issue, Appellant claims that, during his December 6, 2017 resentencing hearing,[4] the prosecutor for the Commonwealth committed fraud upon the trial court. More specifically, Appellant alleges that the prosecutor falsely stated that even though Appellant was convicted of first-degree murder before 2012, the trial court could follow 18 Pa.C.S.A. § 1102.1 and consider "the starting point for [Appellant's] first-degree murder conviction [at] 35 [years' incarceration] to life." Appellant's Brief at 19. Because the prosecutor for the Commonwealth was correct in this assertion, Appellant's claim is meritless.

In the wake of the United States' Supreme Court's decision in **Miller**, **supra**, which determined that mandatory sentences of life without the possibility of parole for juvenile homicide offenders violated the Eighth Amendment of the United States' Constitution, and the High Court's subsequent decision in **Montgomery v. Louisiana**, 577 U.S. 190 (2016), which held that **Miller** applied retroactively to cases on collateral appeal, the General Assembly enacted 18 Pa.C.S.A. § 1102.1 (sentence of persons under the age of 18 for murder). Section 1102.1 provides, in relevant part, as follows.

> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at

---

[4] The December 17, 2017 hearing was continued to January 10, 2018 during which the trial court issued Appellant's sentence.

the time of the commission of the offense shall be sentenced as follows:

> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S.A. § 1102.1(a)(1). Hence, by its very terms, Section 1102.1(a) only applies to those individuals convicted of first-degree murder "after June 24, 2012." ***Id***.

In June 2017, our Supreme Court reviewed the controlling United States Supreme Court decisions with respect to juvenile homicide offenders in ***Commonwealth v. Batts***, 163 A.3d 410, 455 (Pa. 2017) ("***Batts II***"), *abrogated by* ***Jones v. Mississippi***, 593 U.S. 98 (2021). Of relevance herein, the ***Batts II*** Court directed sentencing courts to use, "as guidance," Section 1102.1 when "fashion[ing] the minimum term of incarceration" for a juvenile homicide offender, including those, like Batts (and Appellant herein), convicted before June 24, 2012. ***Batts II***, 163 A.3d at 484. More specifically, and with respect to those individuals convicted of first-degree murder before June 24, 2012 and, as such, outside of Section 1102.1's parameters, the ***Batts II*** Court stated:

> As we explain in greater detail later in this Opinion, for purposes of uniformity in sentencing juveniles facing life without the possibility of parole, courts should examine both the ***Miller*** factors and the section 1102.1(d) factors prior to reaching that decision, regardless of whether the juvenile was convicted pre- or post–***Miller***. We observe that some of the ***Miller*** factors are noticeably absent from section 1102.1(d). All of the ***Miller***

factors, however, must be considered by a court prior to sentencing a juvenile to life without parole.

***Batts II***, 163 A.3d at n.23 (some internal citations omitted). Thereafter, the United States Supreme Court decided ***Jones v. Mississippi***, 593 U.S. 98 (2021) which "severely narrowed the holdings of ***Miller*** and ***Montgomery*** as previously understood by many courts" and "largely [] abrogated" our Supreme Court's decision in ***Batts II***. ***Commonwealth v. Felder***, 269 A.3d 1232, 1235 (Pa. 2022). Hence, "[i]n light of ***Jones***, our Supreme Court in ***Felder*** reevaluated the requirements for sentencing juvenile homicide offenders." ***In re Tarselli***, 2025 WL 314738, *1, *6 (Pa. Super. 2025). Of relevance to the instant matter, however, the ***Fedler*** Court reaffirmed its statement in ***Batts II*** which provided guidance to sentencing courts when called upon to resentence individuals convicted of first-degree murder before June 24, 2012. Indeed, our Supreme Court stated:

> We recognize again that Section 1102.1 applies only to those juveniles "convicted after June 24, 2012." 18 Pa.C.S. § 1102.1(a). In ***Batts II***, we held that "for purposes of uniformity[,]" courts should examine the Section 1102.1(d) factors "regardless of whether the juvenile was convicted pre- or post-***Miller***." ***Batts II***, 163 A.3d at 455 n.23. Although this directive did "not result from a review of the constitutionality of the statute[,]" we saw no problem with instructing sentencing courts "to use the new legislative provision as guidance without making it mandatory." ***Id.*** at 458[,] n.25. We likewise see no problem with reaffirming this non-binding requirement even after ***Jones***.

***Felder***, 269 A.3d at n.15.

Herein, Appellant's resentencing hearings took place on December 6, 2017 and January 10, 2018. During the December 6, 2017 hearing, the trial court questioned the appropriate length of Appellant's minimum sentence in light of **Miller**, **Montgomery** and **Batts II**. The relevant exchange is as follows.

> **[Assistant District Attorney]:** The Commonwealth's position in this matter is simple. You are in a position to resentence [Appellant]. There are two heinous murders committed in this case, along with a burglary, another criminal attempt homicide[.]
>
> **[The court]:** Here is my problem[.] You understand, if I make it 50 to life, [Appellant's counsel] will take this up to the Pennsylvania Supreme Court and it will come back. It will come back. It will come back.
>
> **[Assistant District Attorney]:** It is possible.
>
> **[The court]:** No, it will come back. I [am] not exactly sure where they came up with this 40 years. You and I will talk about that. But it seems that that is it. I can probably add a year or two to that 40 years.
>
> And truth be told, if we are being incredibly candid about all this stuff, the fact he [is] parole eligible means almost nothing. It means almost nothing.
>
> **[Assistant District Attorney]:** Just for your own purposes, of the people I have resentenced over the course of the last year, two have been paroled.
>
> **[The court]:** Really? []
>
> **[Assistant District Attorney]:** Yes, both cases [involved] second degree murder convictions and both [] happened in the '70s or early '80s.
>
> **[The court]:** So how old are they?
>
> **[Assistant District Attorney]:** Both of them are in their 50s. So I [am] saying they have been released. And there is a

process that they are going through in processing. I [have] already been contacted about one that I resentenced earlier this year. … It is happening.

**[The court]:** I understand. I suspect none of them were double homicide.

**[Assistant District Attorney]:** [Appellant's] case is unique in that regard.

**[The court]:** I know. I understand. I [am] trying to be realistic.

**[Assistant District Attorney]:** I respect that. I [am] just saying to you, unfortunately, there are two lives that are lost and certainly the [punishment] should fit that.

**[The court]:** I will not try at any time – I do [not] even know that [Appellant] or his attorney are trying to downplay the fact that these two young men lost their lives. I do [not] think so. I mean, it is impossible. The truth be told, I have been doing this an awful long period of time. If this is [not] the most heinous crime I [have] had -- … this was just shocking. No question. No question.

But I have the United States Supreme Court and the Pennsylvania Supreme Court to deal with. And they decided certain things, and I have to basically act within the parameters that they give me. And you basically have conceded that.

**[Assistant District Attorney]:** Right.

**[The court]:** Okay.

**[Assistant District Attorney]:** It is just a number that we have to pick.

**[The court]:** And that [is] my job.

**[Assistant District Attorney]:** The Commonwealth suggests for first-degree murder, the way *Batts* [*II*] comes down, what the Supreme Court has suggested to you, is that you follow the statute as it exists today, which means the starting point for [Appellant's] first-degree murder conviction is 35 to life.

N.T. Resentencing Hearing, 12/6/17, at 102-106 (unnecessary capitalization omitted) (emphasis added). Thus, contrary to Appellant's claim, the prosecutor for the Commonwealth did not commit fraud or lie to the trial court to secure a lengthy minimum sentence. Instead, the prosecutor simply advised the trial court that, pursuant to **Batts II**, it was permitted to look to Section 1102.1 in fashioning Appellant's minimum sentence even though Appellant's conviction occurred before 2012. This position strictly adhered to our Supreme Court's guidance in **Batts II**, which it subsequently reaffirmed in **Felder**. Thus, Appellant's claim lacks merit.

In his third issue, Appellant contends that the PCRA court erred in dismissing his claim that the trial court failed to award the correct credit for time served. More specifically, Appellant argues that he was arrested in this matter on March 11, 2005 but that, in its sentencing order, the trial court commenced his time-credit a little over three years later on April 16, 2008. Appellant, therefore, avers that the trial court's "miscalculation denied Appellant approximately 1,131 days" of time-credit and, in turn, rendered his sentence illegal. Appellant's Brief at 26. Importantly, the PCRA court did not address the merits of Appellant's illegal sentence claim. Instead, the PCRA court concluded that, because Appellant did not raise this issue in his *pro se* PCRA petition or seek to amend his *pro se* PCRA petition and simply included this claim in his July 22, 2024 response to the PCRA court's 907 notice, Appellant failed to preserve this issue for review. **See** PCRA Court Opinion, 12/16/24, at 8-9. The PCRA, however, "permits our courts to grant relief from

- 11 -

illegal sentences." ***Commonwealth v. Zack***, 262 A.3d 497, 502 n.15 (Pa. Super. 2021). Indeed, if a PCRA petition is timely, this Court may consider "the legality of sentence *sua sponte*." ***Id.***; ***see also Commonwealth v. Pope***, 216 A.3d 299, 303 (Pa. Super. 2019) (explaining that a challenge to the legality of sentence cannot be waived and can be considered *sua sponte* on appeal if a PCRA petition is timely). Accordingly, we will review the merits of Appellant's claim.

Section 9760 of the Pennsylvania Sentencing Code governing how a trial court applies credit for time served states, in pertinent part,

> (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.
>
> ***
>
> (4) If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence.

42 Pa.C.S.A. § 9760(1) and (4). This Court has held that "a defendant shall be given credit for any days spent in custody prior to the imposition of sentence, but only if such commitment is on the offense for which sentence is

- 12 -

imposed." ***Commonwealth v. Richard***, 150 A.3d 504, 520-521 (Pa. Super. 2016) (original quotation marks omitted) (citation omitted).

Our review of the certified record confirms that the January 10, 2018 sentencing order does state that the effective date of Appellant's sentence is April 18, 2008. Without the benefit of the PCRA court's analysis and without any other information in the certified record relevant to this issue, it is unclear whether Appellant was incarcerated for this matter on March 11, 2005 as he claims.[5] Hence, we are unable to complete a definitive determination regarding the amount of time-credit to which Appellant may be entitled. Thus, out of an abundance of caution, and to ensure that Appellant receives the correct amount of credit for time served, we vacate the judgment of sentence and remand this matter solely to permit the trial court to re-calculate the time credit to which Appellant may be entitled for all periods spent in pre-trial custody because of conduct on which the charges in these cases are based. In light of the foregoing, we also direct the PCRA court to appoint counsel for Appellant to assist in this process.[6]

---

[5] Importantly, the criminal complaint in this matter was filed on March 10, 2005.

[6] Since we conclude that Appellant is entitled to a hearing to determine time credit and, as such, further direct the PCRA court to appoint counsel for Appellant, we need not address Appellant's remaining claim on appeal which focused upon Appellant's continued representation by legal counsel within the context of the collateral relief proceedings initiated on May 18, 2023.

- 13 -

Order vacated. Judgment of sentence vacated for the limited purpose described more fully above. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

7/15/2025